Harry C. Kinne et al., Appellants, v. Dick Duncan and
First United Finance Corporation, Appellees

Heard in this court at the May term, 1942. Opinion filed June 27, 1942. Rehearing denied September 9, 1942.

ANDREW O. NIEHOFF, of Carlyle, for appellants.

WEEKS, SURLES & POTTER, of Tyler, Texas, for certain appellee.

McCABE, ABRAHAMS & DALY, of Chicago, and RUSSELL WILSON, of Centralia, for certain other appellee; RUSSELL WILSON, of Centralia, and HARRY ABRAHAMS, of Chicago, of counsel.

Mr. JUSTICE DADY delivered the opinion of the court. This is an appeal from a decree rendered in a mining partnership accounting suit involving an oil lease.

For convenience the litigants will be referred to as follows: Harry C. Kinne as "Kinne," Uella Kinne as "Mrs. Kinne," Elnora Horton as "Mrs. Horton," Dick Duncan as "Duncan," Allen A. Borton as "Borton" and First United Finance Corporation as "finance corporation."

Duncan is in the business of drilling oil wells in Texas and in Illinois. On April 26, 1937, Henry Knolhoff, who was the owner of forty acres of land in Clinton county, gave one Osborne an oil and gas lease thereon, herein referred to as the "Knolhoff" lease, reserving to himself a one-eighth royalty. On March 13, 1940, Duncan became the owner of the interest given the lessee. Borton is also engaged in the oil business and on June 14, 1940, acquired a one-half interest in the Knolhoff lease from Duncan. An agreement was entered into at this time between Duncan and Borton, the details of which are in controversy, for the drilling of certain oil wells by Duncan upon this forty acre tract, and thereupon the relationship between Duncan and Borton admittedly became that of mining partners. Duncan commenced the drilling of well No. 1 on the premises about June 28, 1940.

On July 12, 1940, Borton assigned to the Kinnes, "share and share alike," a one fourth of his interest in the Knolhoff lease, and on the same date assigned to Mrs. Horton his remaining one-fourth interest in said lease, which assignments were recorded on the same date. Kinne is a lawyer and represented Borton as his attorney in various oil matters prior to June 1940. Mrs. Kinne is the wife of Kinne; Mrs. Horton is the mother-in-law of Borton.

Between June 28, 1940, and the commencement of this suit Duncan completed the drilling of nine wells on said premises, the last about September 5, 1940. All of the wells with the exception of one, No. 6, were drilled on the east 20 acres of the tract in question. Wells numbered 1 to 4 inclusive are substantial producers. Some oil

has been produced from wells numbered 7 and 9, while wells 5 and 8 are dry. Duncan drilled well No. 6 on the west 20 acres of the tract in question and this well was dry. All oil produced has been sold to Union Pipe Line Company.

On various dates between July 20, 1940 and the date of the filing of suit, Duncan, the Kinnes and Mrs. Horton each made assignments to the finance corporation of certain oil payments against all or a portion of their respective interests in the leasehold estate to secure the payment of certain advances made to them respectively by the finance corporation.

On October 29, 1940, Duncan filed in the recorder's office of Clinton county a claim for lien in the amount of $14,810.31, in which he stated that at the request of the Kinnes and Mrs. Horton he had conducted the development and operation of the leasehold in question; that as his mining partners the Kinnes and Mrs. Horton were subject to the payment of one half of the costs of such development and operation; that such indebtedness amounted to the sum of $14,810.31 and that he, Duncan, claimed an oil and gas lien as well as a partnership lien upon their one-half interest in said lease, the equipment thereon and the oil and gas produced therefrom. On January 15, 1941, Duncan filed in said recorder's office his amended claim for such lien in the sum of $15,200.83. Notice of the filing of such lien claims was given to the Union Pipe Line Company, and thereupon payments were stopped by said company, including all payments being made to the finance corporation upon the assignments held by it.

On January 8, 1941, Kinne filed his complaint herein alleging that on July 12, 1940, he and Mrs. Horton each became the owner of one-fourth interest in said leasehold subject to the rights of the finance corporation; that Duncan drilled and completed wells numbered 1 to 4 but that subsequent to the completion of well No. 4, and without the consent and against the objection of the

plaintiff and Mrs. Horton, Duncan drilled wells numbered 5 to 9, both inclusive; that such wells were in no way necessary for the reasonable development and operation of the leasehold; that the charges made by Duncan were excessive and unreasonable, and that the liens filed by Duncan constituted a cloud upon the plaintiff's title. The complaint asked for an accounting, the appointment of a receiver, and the removal of the claims for lien filed by Duncan. Later Mrs. Kinne and Mrs. Horton on their motion were joined as coplaintiffs.

Duncan filed an answer and counterclaim which alleged that by reason of the Borton assignments the Kinnes and Mrs. Horton became his mining partners; that Borton either remained the owner of his interest so assigned by him by reason of the fact that said assignments were not bona fide, or that in the alternative Borton acted as the agent of the Kinnes and Mrs. Horton in the development and operation of said lease; that, as such agent, Borton authorized the drilling of the nine wells in question and that there was due from the Kinnes and Mrs. Horton for such drilling the sum of $15,200.83, for which sum Duncan claimed both an oil and gas and a partnership lien against the interests of the Kinnes and Mrs. Horton. Duncan also claimed that the liens held by him were superior to the rights of the finance corporation created by the assignments received by it from the Kinnes and Mrs. Horton. In such counterclaim Duncan asked that his liens be adjudged prior liens as against the rights of the finance corporation, and that such liens be foreclosed for the amount due to him from the Kinnes and Mrs. Horton.

The finance corporation filed a counterclaim setting up the various assignments made to it by the plaintiffs and by Duncan, and asking that its rights be adjudicated as superior to those of the plaintiffs and Duncan. After the foregoing pleadings had been filed Duncan was appointed receiver by agreement of all parties and the propriety of such receivership is not in issue.

The case was heard before the chancellor in open court, who then rendered the decree appealed from. In such decree the chancellor found that upon the making of the assignments by Borton to the Kinnes and Mrs. Horton, the last named parties became members of a mining partnership along with Duncan; that Duncan was the owner of a one-half interest therein; that Kinne and Mrs. Kinne were the owners of a one-fourth interest, and Mrs. Horton the owner of a one-fourth interest; that the interest of each of such parties was subject to the respective assignments made by them to the finance corporation, and that such assignments constituted valid and binding first liens against the respective interests of said parties, to be paid from the oil runs received from said leasehold in accordance with such assignments; that Borton was the agent of the Kinnes and Mrs. Horton, duly authorized by them to represent their interests in the development and operation of said lease, and that said agent authorized Duncan to drill all nine of said wells; that the drilling of all such wells was reasonably necessary for the development of said leasehold; that Duncan acted in good faith in such drilling; that Duncan was not entitled to receive any profit therefrom but only the actual cost of drilling and development, which cost the court found to be the sum of $42,149.95, after deducting certain credits, and that one-fourth of the same or $10,537.48 should be paid by Mrs. Horton and a like amount by the Kinnes; that after crediting certain payments already received there was due Duncan from Mrs. Horton for such drilling and development the sum of $3,037.48 and from the Kinnes the sum of $6,537.48; that Duncan was not entitled to an oil and gas lien as provided by the statute, but was entitled to a mining partner's lien against the respective interests of the plaintiffs for the amount found due him.

The decree then ordered that unless the amount found due Duncan was paid within 60 days the respec-

tive interests of the plaintiffs be sold at public sale, subject to the rights of the finance corporation, with the usual provisions for a report of sale together with a report of a possible deficiency in favor of Duncan and against Kinne and Mrs. Horton.

Plaintiffs have appealed from the decree and defendant Duncan has filed a cross-appeal. We shall first consider the assignments of error made by plaintiffs.

Plaintiffs' first contention is that the chancellor improperly assessed against them a share of Duncan's costs and expenses in the drilling of the nine wells in question. The chancellor based the assessment of this liability upon his conclusion that a mining partnership existed between plaintiffs and defendant for the purpose of drilling these nine wells. It is admitted that such a partnership did exist between Duncan and plaintiffs' predecessor in title, Borton. Both parties also recognize that one of the peculiar legal attributes of a mining partnership, as pointed out in the case of *Harris v. Young,* 298 Ill. 319, 326, is the absence of a *delectus personae,* and that upon the sale of any partner's interest the vendee of such interest, unless there is an agreement to the contrary, becomes a partner, in the place of the vendor, with the remaining members of the firm. Following this rule, the assignments made by Duncan's partner, Borton, to the Kinnes and to Mrs. Horton operated to make them members of the partnership in place of Borton.

Plaintiffs insist that Mrs. Kinne should not be considered a partner because of an alleged assignment made by her of her interest to her husband, Harry C. Kinne. No such assignment was offered in evidence and there is no testimony as to the date when such alleged assignment was made. So far as the record shows, it may have been made on the morning of the trial. In this state of the record we think the chancellor was justified in finding that Mrs. Kinne remained a partner throughout the transaction.

Plaintiffs further contend that even if a mining partnership existed between them and Duncan that Duncan had no authority to drill wells numbered 5 to 9 inclusive, and to subject the plaintiffs to the payment of a proportionate share of the costs of such drilling. Plaintiffs maintain that defendant's authority to drill ended with the completion of well No. 4. Duncan's contention at the trial was that Borton either remained the actual owner of the interest assigned to the Kinnes and Mrs. Horton and as such agreed to the drilling of all wells, or in the alternative that Borton was the agent of the plaintiffs and in this capacity authorized Duncan to drill the wells in question. The chancellor based his decree on this latter theory. The evidence shows that even after making the assignments in question Borton remained on the scene of operations and reported from time to time to the plaintiff Kinne, and also to Mrs. Horton, as to the developments on the lease. Where the chancellor has heard the witnesses in open court his findings and conclusions will not be disturbed on appeal unless they are manifestly and palpably wrong. (*Hall v. Pittenger,* 365 Ill. 135.) Although the evidence was conflicting on the question of agency, we think the chancellor was justified in holding that Borton was in fact the agent of the plaintiffs from the time they received their assignments from him and that as such agent he authorized and knowingly permitted Duncan to drill the nine wells in question.

Plaintiffs make the further contention that if a mining partnership existed between themselves and Duncan the relationship existing between the partners was one of trust and confidence and that Duncan cannot claim a profit from his copartners for the labor and material furnished by him in the development of the partnership property. We agree with this general statement; however, it appears that the chancellor deducted the sum of $10,800 representing Duncan's alleged profit in the transaction, and that the amounts finally assessed

against plaintiffs were based upon the actual expenses and costs incurred by Duncan. We have reviewed the evidence as to such costs and expenses and we think that the figure established by the chancellor was reasonable and was justified by the evidence.

Having determined the amount of Duncan's costs and expenses which were chargeable to the partnership, it was necessary for the chancellor to make a proper division of these costs and expenses between the plaintiffs and Duncan. Under the terms of the decree the total costs of development were apportioned as follows: Duncan, one half; Mrs. Horton, one fourth; Mr. and Mrs. Kinne, one fourth. Plaintiffs insist that the chancellor erred in assessing one fourth of the costs against Mr. and Mrs. Kinne jointly. In the absence of an agreement fixing a different measure of liability, the share of authorized partnership expenses to be paid by each partner in a mining partnership is fixed in the same proportion as his interest in the partnership property. (*Harris v. Young,* 298 Ill. 319.) By the assignment from Borton, Mr. and Mrs. Kinne received their one-fourth interest in the leasehold "share and share alike." The effect of this assignment was to give each of them an undivided one-eighth interest and the chancellor should have held each of them liable for one eighth and and not one fourth of the development costs. The decree should also have held Mrs. Kinne liable for her proportionate share of any deficiency along with her husband and Mrs. Horton.

Plaintiffs apparently recognize the rule that under certain circumstances a member of a mining partnership may be entitled to a partnership lien against the interest of his copartners which he can enforce by foreclosure in a court of equity. Plaintiffs deny, however, that Duncan is entitled to such a lien under the facts of this case. The first point made by plaintiffs in this connection is that Duncan is still indebted in a large amount to persons who extended him credit for labor and ma-

terials used in connection with the development of the partnership property; that credit was extended to Duncan personally and not to the partnership, and that under such circumstances Duncan should not be permitted to assert a lien for such expenses against the partnership property. Only one of Duncan's creditors, the Pure Torpedo Company, was made a party to this proceeding and by agreement, this claim has been paid by the receiver. The positive and uncontradicted testimony is that the credit which Duncan received was extended to him alone and not to the partnership. In this situation, as pointed out in the case of *Watt v. Kirby,* 15 Ill. 200, 202, the creditors cannot hold the other partners liable although they may have received the benefit of the transaction. The partnership lien being asserted by Duncan in this suit is based upon his contribution to the development of the partnership property in excess of that made by the plaintiffs. We know of no requirement that a partnership contribution must be made in cash in order to entitle a partner to obtain reimbursement from his copartners. The situation would not have been any different if Duncan had borrowed on his personal credit a sufficient sum of money to pay these same creditors and after paying them had then asserted his claim for lien. There is no possibility at this late date of any creditor filing a valid lien claim against the partnership property under the gas and oil statute by reason of any labor or materials furnished to Duncan in connection with the development of the wells in question. The statute provides that such claims must be filed within four months after the completion of the work and this period had expired before the commencement of this suit. We see no reason why the existence of these outstanding personal bills owed by Duncan should prejudice his right to an equitable lien.

The next point made by plaintiffs is that Duncan lost any mining partner's lien to which he may have been entitled when he, Borton, the Kinnes and Mrs. Horton

executed certain division orders and transfer orders to the Union Pipe Line Company. The first of these division orders was executed by Duncan and Borton about July 3, 1940, in which they thereby agreed to sell to the Pipe Line Company the oil produced from the Knolhoff lease. The order specified that "until further notice you (the pipe line company) will give credit for all oil received from said wells as per directions below." It then provides that the pipe line company is to credit to Duncan a .4375 w. i. (which is one half of a seven-eighths working interest) and to Borton a like amount subject to a $7,500 oil payment to be made to the finance corporation out of one-hlaf of the seven-eighths interest until this amount had been received, "then to revert to the assignor." A similar division order was signed by the Kinnes, Mrs. Horton and the finance corporation under which the oil company was to credit the finance corporation a .4375 w. i. until a payment of $7,500 was paid to the finance corporation from oil sold from the lease, at which time one fourth of a seven-eighths w. i. was to revert to the Kinnes jointly and one fourth to Mrs. Horton. As new loans were secured from time to time by the plaintiffs and by Duncan from the finance corporation, transfer orders were delivered by the respective parties to the pipe line company setting up the new interest of the finance corporation in the oil to be sold.

Plaintiffs contend that a partnership lien can extend only to partnership property as such, and that the execution of the above mentioned division orders and transfer orders by the plaintiffs and Duncan was, in effect, a division of the partnership property among the partners which operated to divest any prior partnership lien therein. In support of this contention, plaintiffs cite *Childers v. Neeley,* 47 W. Va. 70, 34 S. E. 828. While some of the language used in this case supports plaintiffs' position, the later case of *Greenlee v. Steelsmith,* 64 W. Va. 353, 62 S. E. 459 qualifies the earlier

case. This is evident from the following statement made by the court in the *Greenlee* case: "It is contended by appellant that if the leaseholds were social assets, the execution by Greenlee and Steelsmith of division orders was a release of Greenlee's lien. From what has been said, it is clear that this lien was only released on the product from the time it entered the pipe lines to the credit of the different parties entitled thereto, but remained in force as to the social assets not divided." Both the *Childers* case and the *Greenlee* case are cited in *Harris v. Young*, 298 Ill. 319, in which the court makes this elaboration of the rule: "These liens exist only against the partnership property while it is distinctly such partnership property. Such liens on the oil itself in favor of the members only exist while it is the property of the firm. When it is separated or divided by division or sale and any part of the oil is set apart to the individual members of the firm as their distinct part or share, or such oil is sold and the proceeds divided among the individual members of the firm, no lien further exists either on the oil thus separated and divided or on the proceeds of that so sold and divided."

The service of Duncan's claim of lien upon the pipe line company put the company on notice that Duncan was no longer willing to have the oil thereafter produced or the proceeds received therefrom distributed in the manner set forth in the division and transfer orders which had been executed by him. After the service of such notice, the pipe line company withheld asking any further division or payment of monies to any of the parties named in the division and transfer orders. The decree entered by the chancellor gives Duncan a mining partner's lien against the respective interests of the plaintiffs in the leasehold estate and the oil produced therefrom and the proceeds thereof. This provision of the decree was too broad. Duncan's partnership lien under the foregoing authorities should have

been specifically restricted to all oil entering the pipe lines of the pipe line company and the proceeds received therefrom after the service of his lien claim upon the pipe line company on October 29, 1940.

Plaintiffs' next contention is that the decree is erroneous because it orders an accounting without providing for a complete dissolution of the partnership and a sale of all of its assets. There is clearly no inherent lack of jurisdiction in a court of equity to order a partnership accounting without also providing for a dissolution. The case of *Harris v. Young, supra,* indicates that an accounting may be had in a mining partnership without declaring a dissolution. Moreover, even if the usual equity practice is to insist upon a dissolution before ordering a partnership accounting, plaintiffs have waived the benefit of this rule in this case. In their original complaint plaintiffs themselves asked for an accounting and made no request for a dissolution of the partnership. When Duncan's counterclaim was filed asking for this same restricted relief, plaintiffs answered and made no objection to the court assuming jurisdiction, and plaintiffs did not raise the question at any stage during the trial court proceedings. It is a well-settled rule of law that a person cannot try a case on one theory in the trial court and on another theory in a court of review. (*Flanagan v. Wilson,* 310 Ill. App. 557.)

Another assignment of error by plaintiffs is that the chancellor found the Fox Rig and Lumber Company entitled to a prior lien and ordered the payment of its claim in the amount of $838.78 from the funds in the hands of the receiver even prior to the payment of the claim of the finance corporation. This company furnished either services or materials to Duncan which were used by him in connection with the development of the leasehold. However, the company was not a party to the proceedings and no proof was offered to sustain such claim. In this situation it was error for the chan-

cellor to order the payment of this claim in the manner provided in the decree. The amount so due the Fox Rig and Lumber Company should have been included in the amount of the judgment given to Duncan thereby increasing to that extent Duncan's lien against the interests of the plaintiffs.

Plaintiffs also complain of the provision made in the decree directing the receiver to pay over to the finance company 80 per cent of the monies now in his hands or to come into his hands from the sale of oil runs out of the working interest of the plaintiffs and Duncan after deducting the reasonable costs of operating said lease until the sums due to it under the respective assignments are paid. Plaintiffs insist that all of their respective shares of the funds in the receiver's hands should be paid to the finance corporation rather than 80 per cent thereof. The purpose of the 80 per cent limitation is not apparent from any of the provisions of the decree. The chancellor could properly withhold from distribution by such receiver a sufficient reserve in order to provide for all operating expenses for the continued operation of the lease. The order provides that 80 per cent payments are to continue until the further order of the court, and if any adjustment is necessary in this respect the chancellor has jurisdiction to make the necessary correction.

The foregoing disposes of all of plaintiffs' objections to the decree. We shall now consider the cross errors assigned by the defendant, Duncan.

Duncan's principal objection to the decree is that it fails to provide that his partnership lien is superior to the rights of the finance corporation under the assignments given to it by the plaintiffs. No question is raised by any of the parties as to the correctness of the amounts found to be due to the finance corporation under the various assignments given to it by Duncan and by the plaintiffs. Duncan admits that the assignments made by him to the finance corporation are binding upon

his interest in the leasehold and that the finance corporation should be repaid the advances made to him out of his share of the first runs received from the oil produced from the leasehold. He contends, however, that the chancellor erred in holding that he was estopped from asserting that his partnership lien was prior to the rights of the finance corporation under the assignments given to it by the plaintiffs and in ordering the finance corporation to be first paid out of the plaintiffs' share of the proceeds of the oil runs the amounts due to it under plaintiffs' assignments.

In July of 1940, Borton, although he had already assigned all of his interest in the leasehold to the Kinnes and Mrs. Horton, executed an assignment to the finance corporation in the amount of $7,500, which purported to cover his one-half interest in the lease. The finance corporation paid out the sum of $6,000 on this assignment to Borton and Borton paid $5,000 of this sum to Duncan to apply upon the development costs of the lease. The finance corporation requested that the assignment be corrected and in August of 1940, Duncan went to Chicago to assist Borton and the Kinnes in making such correction and was present when a new assignment was made by the Kinnes and Mrs. Horton to the finance corporation. Borton's assignment was thereupon released. On August 14, 1940, Mrs. Horton made an assignment to the finance corporation for $7,500 against her interest and a check for $6,000 was received upon this assignment by Borton, which was turned over by him to the plaintiff, Harry C. Kinne. Kinne on August 16, 1940, mailed $5,000 received from the proceeds of this assignment to Duncan to apply upon development costs. Duncan made requests upon Borton from time to time for money to pay for development costs and knew at the time of making these requests that Borton did not personally have the funds to pay these costs, and that at least a part of the costs was being secured by means of the loans made by the finance

corporation to the plaintiffs. Duncan was furnished statements from time to time by the pipe line company and at least some of these statements showed the interest of the finance corporation under the various assignments which had been made to it from time to time both by Duncan and by the plaintiffs. We think that the evidence was sufficient to justify the chancellor's finding that Duncan knew that loans were being made to the plaintiffs by the finance corporation and that plaintiffs were making assignments to the finance corporation to secure such advances. All of these assignments were made by plaintiffs prior to the filing of Duncan's lien claim. Duncan's partnership lien was a secret lien until it was filed and notice given to the interested parties, while the assignments made to the finance corporation were each recorded and were matters of record. At no time did Duncan make any objection to the finance corporation making any of the advances in question to the plaintiffs, or give any notice to the finance corporation of his claim for lien until such claim was filed on October 29, 1940. It would be highly inequitable to permit Duncan, after sitting idly by and receiving at least a portion of the benefit of such assignments with knowledge that the finance corporation was advancing funds to plaintiffs, to assert at this late date that his rights are superior to those of the finance corporation. We think that the chancellor was clearly justified in subordinating Duncan's lien to the rights of the finance corporation in the manner provided by the decree.

Duncan makes the further contention that if the rights of the finance corporation are not subject to his partnership lien they are subject to the oil and gas lien claimed by him. The chancellor found that Duncan was not entitled to an oil and gas lien. This type of lien is created by section 2 of our Oil and Gas Lien Act, par. 72, ch. 82, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 93.64], which provides that ''any person who shall under contract with the owner of any land or leasehold for oil or gas

purposes . . . furnish materials . . . used . . . in the digging, drilling . . . of any oil or gas well upon such land or leasehold . . . shall be entitled to a lien . . .'' Admittedly the labor and materials furnished by Duncan were used in the development of a leasehold in which he owns a one-half interest. In the case of *Uncle Sam Oil Co. v. Richards,* 60 Okla. 63, 158 Pac. 1187, involving the construction of an identical statute in the State of Oklahoma, it was held that the act did not apply to work done or materials furnished by a person who was a part owner of the property. A similar holding was made in the case of *Gaudreau v. Bennett,* 137 Kan. 644, 21 P. (2d) 330.

We do not think that our own statute contemplates that a part owner of an oil and gas lease who has furnished labor and materials for the development of such lease is entitled to a statutory lien for such labor and materials as against his co-owners. There was no error in the chancellor's disallowance of an oil and gas lien to Duncan.

For the several reasons indicated, the decree will be affirmed in part and reversed in the particulars pointed out in this opinion and the cause remanded with directions to the chancellor to amend the decree in conformity with the views herein expressed.

*Affirmed in part, reversed in part and remanded with directions.*