McMILLAN, *Trustee v.* POWELL.

5-2839                                   362 S. W. 2d 721

Opinion delivered December 17, 1962.

*McMillan & McMillan, J. Bruce Streett, W. H. Kitch-ens,* for appellant.

*Harry Crumpler* and *Lamar Smead,* for appellee.

SAM ROBINSON, Associate Justice. On August 11, 1958, Delbert Powell filed this action alleging that he and Al and Alice Grandbush are owners as tenants in common, along with others, in three separate leasehold estates producing oil and gas; that in the course of operations, Powell had expended large sums of money; that the Grandbush's proportionate part of the expense of such operations

amounts to the sum of $21,912.93. It was further alleged that Monsanto Chemical Company is the purchaser of the oil and gas produced on the properties. Powell asked that such company be required to pay to him the oil and gas runs going to the credit of the Grandbushs until the alleged indebtedness is paid in full.

Later, H. W. McMillan was made a party. It developed that Mr. McMillan had obtained a judgment against Grandbush on June 4, 1958, execution was issued June 7, 1958, and levied July 10, 1958. This was a month or so prior to the time Powell filed this suit.

McMillan bought the Grandbush interest at the execution sale, and now the only controversy is between Powell and McMillan. Powell contends that he has a right to be reimbursed for money spent in the operation of any and all of the leases out of oil and gas produced on any one of the leases. On the other hand, McMillan maintains that Powell is entitled to be reimbursed for money spent in the operation of a lease only from the sale of oil and gas produced from that particular lease. The Chancellor held that Powell should be reimbursed in full from the sale of oil and gas from any or all of the leases. McMillan has appealed.

The three leases involved are known as the Reynolds Berg Lease, the Laney Lease, and Reynolds Brothers Lease. Appellee states his position as follows: "Obviously the appellee seeks to recover the money expended by him in the maintenance and improvement of such property from the three leases herein involved for the reason that the well upon the Reynolds Brothers Lease was nonproductive and he would never recover the money expended by him in the improvements without recovering the runs from the three leases."

The appellee recognizes the rule that, to quote appellee, "The rights of contribution of tenants in common who make repairs and improvements upon common property without the consent of the other tenants is not ordinarily entitled to contributions beyond the benefits actually recovered from such property or particular

lease." But appellee contends that in the case at bar, the rule has no application because the improvements were made with the consent of the then owner, Grandbush. It appears that the only consent given by Grandbush was in 1957 when he agreed to drilling, completing and equipping "a well on the Reynolds Brothers Lease," which resulted in a dry hole.

The leases are not worked as one operation. Separate records were kept on the operation of each lease. Moreover, the owners of the three leases are not identical. This case is controlled by *Ashland Oil and Refining Co.* v. *Bond*, 222 Ark. 696, 263 S. W. 2d 74. There, it was pointed out that "when one tenant in common has drilled a producing oil well upon the common property he must be given credit for his reasonable expenses upon being required to account to the cotenant for the oil withdrawn from the land." But that the share of the proceeds from all wells owned by co-lessees could not be applied against the expenses of reworking just one of the wells. It was further pointed out in the Ashland case that in the absence of an agreement, the operator incurred the expenses of reworking a well at his own risk and was entitled to be reimbursed by a co-lessee only to the extent of the value of the co-lessee's share produced from such well, if any.

Reversed with instructions to enter a decree not inconsistent herewith.