JOHN CAREY OIL COMPANY, INCORPORATED, Plaintiff-Appellant, v. W.C.P. INVESTMENTS *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0522

Opinion filed July 7, 1987.—Rehearing denied August 28, 1987.

Barber, Segatto, Hoffee, Hines & Edwards, of Springfield (Barry O. Hines and R. Kurt Wilke, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (Steven H. Hoeft and Richard L. Sandler, of counsel), for appellee Enterprise Finance Company.

Immel, Zelle, Ogren, McClain, Germeraad & Costello, of Springfield (Kevin T. McClain and Robert V. Ogren, of counsel), for appellee Farmers and Merchants State Bank of Bushnell.

JUSTICE KNECHT delivered the opinion of the court:

This case presents the issue of whether a co-owner of an oil leasehold, who is also the sole operator of the leasehold, may assert an oil and gas lien against the fractional working interest of a co-owner of the same leasehold.

On October 15, 1985, John Carey Oil Company, Inc. (Carey), filed a complaint for foreclosure of oil and gas liens against, *inter alia*, W.C.P. Investments (WCP) (a partnership), Farmers and Merchants State Bank of Bushnell (F&M), and Enterprise Finance Company (Enterprise). The complaint alleged Carey was at all relevant times a co-owner and operator of various specified oil and gas leases in which WCP held undivided working interests. In operating the premises and the oil wells thereon for the production of oil, Carey supplied various goods and services in, on, or about the leased premises and wells, all of which were supplied with the knowledge and at the request of WCP. Carey furnished these goods and services, and WCP became indebted to Carey for its proportionate shares of the costs. Carey sent WCP a statement and demand for payment of these costs, but WCP had not paid them, and an amount remained due after allowing all just credit and setoffs.

Carey further alleged that on October 15, 1985, it filed in the office of the Macon County recorder of deeds a claim for a statutory oil and gas lien on WCP's interests in the jointly owned leaseholds, which should be foreclosed in conformity with the Oil and Gas Lien Act (Ill. Rev. Stat. 1985, ch. 82, pars. 71 through 95). Finally, Carey stated Enterprise and F&M were made defendants because they might claim interests in WCP's working interests in the oil leaseholds by virtue of assignments, mortgages, security agreements or other reasons. Carey asserts the interests claimed by Enterprise and F&M are inferior to Carey's lien because Carey began furnishing labor and materials for the benefit of "the other named defendants" prior to the time any interest may have been created in favor of Enterprise and F&M.

The complaint requested any interests of Enterprise and F&M in the jointly owned leaseholds be held inferior to those of Carey; the amount found due be decreed a first and paramount lien on WCP's interest in the leaseholds, the oil and gas produced therefrom and the proceeds thereof; and entry of judgment in this amount in favor of Carey and against WCP together with interest, costs, and attorney fees. The complaint requested foreclosure of the above-mentioned lien if the sums found due were not paid.

Following a hearing, the circuit court granted motions of Enterprise and F&M to dismiss Carey's complaint for failure to state a cause of action, with leave to file an amended complaint stating a cause of action other than foreclosure of lien.

On March 27, 1986, Carey filed a motion for certification pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308) of the question of whether it could assert an oil and gas lien against the working interests of WCP under the facts of this case. The circuit court allowed the motion by order entered July 22, 1986. This court subsequently allowed Carey's petition for leave to appeal pursuant to Rule 308.

Carey contends the relevant statute does not prevent imposition of an oil and gas lien under the circumstances of this case and asserts the sole pertinent Illinois decision, *Kinne v. Duncan* (1942), 315 Ill. App. 577, 43 N.E.2d 425, is inapplicable to the present fact situation, because the case at bar does not involve a mining partnership. Also, Carey contends the decisions from other jurisdictions cited in the relevant portion of the *Kinne* decision do not prevent imposition of an oil and gas lien under the circumstances present here. Furthermore, Carey notes the supreme court has never held an oil and gas lien may not be imposed under the circumstances of this case, and maintains instead, a supreme court case involving mechanics' liens (*E. W. Blatchford & Co. v. Blanchard* (1895), 160 Ill. 115, 43 N.E. 794) strongly supports imposition of an oil and gas lien under these circumstances. Finally, Carey asserts principles of law relating to imposition of mechanics', execution and landlord liens on the individual interests of co-tenants and co-owners of property support its right to impose an oil and gas lien under the facts of this case, as does the language of the relevant provisions of the Oil and Gas Lien Act.

Enterprise argues *Kinne*, as well as cases from other jurisdictions relied upon by the *Kinne* court, are dispositive of the issue presented by this case, and the fact *Kinne* involved a mining partnership and the present case does not is of no consequence. Enterprise contends the important fact is co-ownership of the leasehold, since the *Kinne* decision was intended to prevent the purported vice of allowing co-owners

to assert secret liens against the interests of other co-owners of the same leasehold. Also, Enterprise asserts *Blatchford* is factually distinguishable from the present case, and there are cases other than *Blatchford* which do not allow a co-owner to assert a mechanic's lien against the interest of another co-owner of the same parcel of real estate. Enterprise further contends the language of the Oil and Gas Lien Act, being in derogation of the common law, must be strictly construed, and language contained in that act which provides an oil and gas lien is imposed on the whole of a leasehold estate precludes Carey from asserting a lien against WCP's interest in the oil and gas leaseholds here at issue. Finally, Enterprise maintains allowing such a lien as the one claimed by Carey would encourage collusive lawsuits by co-owners of oil and gas leaseholds designed to frustrate the rights of secured creditors of the co-owners.

F&M asserts *Kinne* and cases cited therein support the principle that a co-owner cannot assert a lien against its own property and thus preclude imposition of a lien under the circumstances here present. F&M also contends a holding that Carey's purported lien is superior to its interests would be unfair and would be "disruptive to well established relationships between creditors and debtors which have developed subsequent to the *Kinne* decision." Also, F&M maintains whether or not Carey and WCP were mining partners is of no relevance, and their status as co-owners of the same leaseholds precludes Carey from imposing a lien on WCP's interests in the leaseholds. Finally, F&M asserts allowance of an oil and gas lien under these facts would permit a co-owner-operator of an oil and gas leasehold to "encumber the whole of the property with a lien impressed against a co-owners [*sic*] fractional undivided interest."

In its reply argument, Carey concedes allowing a mining partner or joint venturer to claim a lien on a portion of a jointly owned leasehold violates the principle that one cannot claim a lien on his own property, but asserts this principle is irrelevant when one claims a lien against a separate working interest in an oil and gas leasehold. Carey further argues its lien could not have come as a great surprise to Enterprise, since Enterprise could not have been unaware WCP was under a duty to pay for its share of the development costs of the various leaseholds. Finally, Carey asserts there is no "vice" in allowing a lien under circumstances such as those here, because the work which gave rise to the lien enhanced or at least maintained the value of the property, and nothing is taken away from a third-party creditor by such a lien.

Section 2 of the Oil and Gas Lien Act provides in pertinent part:

"Any person who shall, under contract with the owner of any land or leasehold for oil or gas purposes *** perform labor or furnish materials, machinery, equipment, tools, or oil well *** supplies, used or employed, or furnished to be used or employed, in the digging, drilling, torpedoing, acidizing, cementing, completing, operating, or repairing of any oil or gas well upon such land or leasehold *** or who shall furnish any material, machinery, tools, equipment, or oil well *** supplies, or perform any labor in constructing, putting together, or repairing any of the material, machinery, equipment, tools or supplies used or employed, or furnished to be used or employed, in the digging, drilling, torpedoing, acidizing, cementing, completing, operating or repairing of any oil or gas well *** shall be entitled to a lien under this Act for the amount due him for such material, machinery, equipment, supplies, or labor, and interest from the date same was due." (Ill. Rev. Stat. 1985, ch. 82, par. 72.)

Section 3 of the same Act provides in part:

"The lien created by this Act shall extend to:

(a) The whole of such land or leasehold, the buildings and appurtenances thereto;

(b) The material, machinery, equipment, tools and supplies so furnished;

(c) All other oil and gas well material, equipment, tools and supplies owned by the owner of such land or leasehold and used, employed, or furnished to be used or employed, in the digging, drilling, torpedoing, acidizing, cementing, completing, operating or repairing of such oil or gas well, and upon all oil or gas wells upon said land or leasehold and the machinery, equipment and appliances used or employed in their operation;

(d) The oil and gas produced therefrom and the proceeds thereof inuring to the working interest therein as such working interest existed on the date such labor was first performed, or the first item of such material, machinery, equipment, tools or supplies was furnished." Ill. Rev. Stat. 1985, ch. 82, par. 73.

As F&M and Enterprise point out, the *Kinne* court did hold an oil and gas lien may not attach to a co-owner's interest in an oil and gas leasehold to secure payment of moneys expended by another co-owner in developing the same leasehold, and the parties being mining partners does not appear to have been a crucial factor in the court's reaching this conclusion. However, the *Kinne* court provided no rationale

for the portion of its decision dealing with the asserted oil and gas lien other than the statement, "we do not think our own statute contemplates" imposition of an oil and gas lien under the circumstances, and the citation of two cases from other jurisdictions, *Uncle Sam Oil Co. v. Richards* (1916), 60 Okla. 63, 158 P. 1187, and *Gaudreau v. Smith* (1933), 137 Kan. 644, 21 P.2d 330, which also hold a statutory oil and gas lien is not available under circumstances similar to those present here.

The statutes upon which the courts in *Uncle Sam* and *Gaudreau* relied are virtually identical to section 2 of the Illinois Oil and Gas Lien Act insofar as they provide, "any person" who under contract "with the owner of any [oil or gas] leasehold" performs labor or furnishes material is entitled to a lien upon, *inter alia,* the "whole of such leasehold." Like the *Kinne* court, the courts in these cases did not articulate convincing or well-reasoned rationales in their conclusions that an oil and gas lien is not available under the facts common to those cases and the case at bar.

There being no prior appellate decisions from this district involving this question, the circuit court properly followed the *Kinne* decision in ruling on defendants' motion to dismiss. (*People v. Collings* (1981), 95 Ill. App. 3d 325, 420 N.E.2d 203.) However, we conclude the holding of the *Kinne* court is not supported by the modern day realities of ownership and financing of oil and gas leaseholds, or the language of the Oil and Gas Lien Act.

■■ Oftentimes, as in the case at bar, a co-owner of an oil and gas leasehold is merely an investor, who plays no role in the day-to-day operation of the leasehold. Such an individual invests an initial amount of money in a leasehold, and agrees to pay his or her proportionate share of operating expenses in exchange for a proportionate share of profits derived from operation of the leasehold. The operation of the leasehold is left to an operating co-owner. (See *Oil and Gas: Operating Agreements, Liens and Receiverships,* in Mineral Law ch. 4, sec. 4.3 (Ill. Inst. for Cont. Legal Educ. 1986).) The most popular form of business organization for the acquisition and operation of interests in oil and gas leaseholds is the limited partnership. (See *Taxation of Oil and Gas Interests,* in Mineral Law ch. 7, sec. 7.65 (Ill. Inst. for Cont. Legal Educ. 1986).) A limited partner's interest in such an organization is assignable. (Ill. Rev. Stat. 1985, ch. 106½, par. 62(1).) Thus, interests in oil leaseholds such as those possessed by WCP are separate and distinct property interests, which can generally be sold without the permission of the other co-owners. A lien attached to such an interest affects only that interest; it does not affect other interests in the

leasehold. For these reasons, we conclude the principle that one cannot impose a lien on his own property is not an absolute bar to liens asserted against individual interests in an oil leasehold by other co-owners of the same leasehold.

Nothing in the relevant statutory language supports a conclusion the legislature intended to preclude a co-owner-operator of an oil leasehold from imposing an oil and gas lien on the working interest of another co-owner. The only language contained in the Oil and Gas Lien Act which defendants specifically mention in their argument an oil and gas lien is not available under the facts of this case is the statement in section 3 that such a lien extends to "[t]he whole of such land or leasehold." This statement does not necessarily indicate the legislature intended an oil and gas lien be applicable only to all of the working interests in a particular leasehold.

■■ Statutes relating to the same subject matter should be construed so as to render their provisions consistent and harmonious with each other. (*Scofield v. Board of Education* (1952), 411 Ill. 11, 103 N.E.2d 640.) Section 1 of the Oil and Gas Lien Act confers the right to a lien on persons providing specified goods or services to "the owner" of any oil or gas leasehold. This section does not specify that "the owner" must be the sole owner of a leasehold in order for a supplier of goods or services to be entitled to a lien. In order to construe section 3 harmoniously with section 1, section 3 must be interpreted to mean that while an oil and gas lien for goods and services provided a co-owner of a leasehold attaches to the entire leasehold, in the sense that it attaches to no specific geographic area of the leasehold, it extends only to the co-owner's undivided fractional interest in the leasehold. This conclusion is supported by the principle that while the possessory rights of tenants in common who have contributed to the purchase of property attach to the entire premises (*Massman v. Duffy* (1947), 333 Ill. App. 30, 76 N.E.2d 547), each tenant in common is, in the event of sale of the property, limited to a share thereof proportionate to his or her contribution to the cost of acquiring the property. See *People v. Varel* (1932), 351 Ill. 96, 184 N.E. 209.

■■ Our decision that Carey is entitled to assert an oil and gas lien on WCP's working interests is consistent with modern authority, which permits the imposition of liens on the interests of co-owners of oil leases by other co-owners, despite the strict construction which is to be accorded lien statutes. (*Blasingame v. Anderson* (1959), 236 La. 505, 108 So. 2d 105; *Kenmore Oil Co. v. Delacroix* (La. App. 1975), 316 So. 2d 468.) It is also consistent with the theory which underlies mechanics' liens, *i.e.*, owners of property benefited by improvements

should pay the cost of the improvements where such are induced or encouraged by their acts. (*Verplank Concrete & Supply, Inc. v. Marsh* (1976), 40 Ill. App. 3d 742, 353 N.E.2d 27.) Here, the interests of all of the defendants in the oil leases at issue were potentially benefited by the services and materials which Carey supplied. According Carey's lien priority over the interests of Enterprise and F&M to the extent that their interests were benefited will provide Carey with reimbursement for the amount by which it has benefited defendants' interests in the leaseholds and nothing more.

We are aware permitting co-owners of oil leaseholds to assert oil and gas liens against the interests of other co-owners creates the possibility of co-owners asserting collusive liens against each other in order to thwart third-party creditors in asserting and realizing upon their legitimate claims against the co-owners. We therefore hold that although a co-owner may claim a lien against the interest of another co-owner in the same oil leasehold, parties who would be adversely affected by such a lien may present evidence that the lien is not premised on expenditures which benefited the interest in the leasehold against which the lien is asserted. To the extent that a third-party creditor establishes that any portion of the amount of such a lien does not represent expenditures which benefited the interest on which the lien is claimed, the third-party creditor's claim is to be accorded priority over the co-owner's lien.

We also recognize that in not following the *Kinne* decision, we change the law relating to oil and gas liens. In so doing, we are merely according to co-owners who have conferred benefits on the interests of other co-owners of the same leaseholds the right to reimbursement for those benefits. Our decision will not unjustly disrupt debtor-creditor relationships which have developed since the *Kinne* decision.

We conclude a co-owner of an interest in an oil and gas leasehold may claim a statutory oil and gas lien on the interest of another co-owner of the same leasehold to the extent of benefits actually conferred on the latter interest. Such liens are entitled to priority over the claims of creditors of the owner of that interest. For these reasons, we reverse the circuit court's dismissal of Carey's complaint and remand to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

GREEN and LUND, JJ., concur.