(Nos. 65932, 65933 cons.—

JOHN CAREY OIL COMPANY, INC., Appellees, v. W.C.P. INVESTMENTS *et al.* (Farmers & Merchants State Bank of Bushnell *et al.*, Appellants).

*Opinion filed December 15, 1988.—Rehearing denied January 30, 1989.*

140

MILLER, J., took no part.

Immel, Zelle, Ogren, McClain, Germeraad & Costello, of Springfield (Kevin T. McClain and Robert V. Ogren, of counsel), for appellant Farmers & Merchants State Bank of Bushnell.

McDermott, Will & Emery, of Chicago (Steven H. Hoeft, Richard L. Sandler and Steven F. Pflaum, of counsel), for appellant Enterprise Finance Company.

Barber, Segatto, Hoffee & Hines, of Springfield

(Barry O. Hines and R. Kurt Wilke, of counsel), for appellees.

JUSTICE RYAN delivered the opinion of the court:

Appellee John Carey Oil Company (Carey) operated several oil and gas leases in which it had an ownership interest with its cotenant, W.C.P. Investments (WCP). On October 15, 1985, Carey filed a complaint in the circuit court of Macon County to foreclose statutory oil and gas liens it had filed against, among other things, WCP's leasehold tenancies. Also joined in the foreclosure complaint were appellants Enterprise Finance Company (EFC) and Farmers and Merchants State Bank of Bushnell (FMB), holders of security interests in WCP's fractional shares of the leaseholds in question. Appellants EFC and FMB moved to dismiss; the trial court granted this motion and certified its ruling for interlocutory appeal under Supreme Court Rule 308 (107 Ill. 2d R. 308). The appellate court reversed (159 Ill. App. 3d 333), and we granted EFC's and FMB's petitions for leave to appeal. We agree with the appellate court's decision and affirm its reversal of the trial court.

Carey, WCP, and others were cotenants in several oil and gas leases. They agreed to share the costs of developing and managing the properties, with Carey acting as operator of the projects and WCP and the other cotenants promising to pay a proportionate share of the expenses Carey incurred. WCP failed to remit its portion of these expenses. Unlike standard practice in the oil and gas industry, no covenant existed between the parties granting Carey a contractual lien under these circumstances. Instead, Carey filed a statutory oil and gas lien against the leaseholds under the Illinois Oil and Gas Lien Act (Ill. Rev. Stat. 1987, ch. 82, par. 71 *et seq.*).

Sometime after Carey commenced operations, WCP assigned, mortgaged, or otherwise encumbered its inter-

ests in the leaseholds to EFC and FMB. When Carey filed the complaint to foreclose its lien, it joined EFC and FMB as defendants. Carey requested that its lien be accorded priority over any interests EFC or FMB might have in WPC's leaseholdings.

The trial court dismissed Carey's complaint for failure to state a cause of action. Carey sought and was granted certification pursuant to Rule 308 (107 Ill. 2d R. 308) for an interlocutory appeal of the trial court's ruling that the Illinois Oil and Gas Lien Act does not permit liens between co-owners. The appellate court accepted the certification and held that although the trial court correctly applied controlling precedent, the cause must nevertheless be reversed. In so holding, the appellate court overruled *Kinne v. Duncan* (1942), 315 Ill. App. 577, *aff'd in part & mod. in part on other grounds* (1943), 383 Ill. 110 (the supreme court opinion does not address the Oil and Gas Lien Act). The appellate court opinion in *Kinne* held that co-owners of an oil and gas lease could not enforce statutory liens amongst themselves. Both FMB and EFC appealed to this court.

The issue presented in this case is whether an owner-operator of an oil and gas lease can attach a statutory oil and gas lien upon the interest of a nonoperating co-owner under the Illinois Oil and Gas Lien Act (Act). Section 2 of the Act states:

> "*Any person* who shall, under contract with the owner of any land or leasehold for oil or gas purposes, or any pipe line, perform labor or furnish materials, machinery, equipment, tools, or oil well or pipe line supplies, used or employed, or furnished to be used or employed, in the digging, drilling, torpedoing, acidizing, cementing, completing, operating, or repairing of any oil or gas well upon such land or leasehold, or in the construction, maintenance, operation, or repair of any pipe line, or who shall furnish any material, machinery, tools, equipment, or oil well or pipe line supplies, or perform any labor in

constructing, putting together, or repairing any of the material, machinery, equipment, tools or supplies used or employed, or furnished to be used or employed, in the digging, drilling, torpedoing, acidizing, cementing, completing, operating or repairing of any oil or gas well, or in the erection, maintenance, operation, or repair of any pipe line, shall be entitled to a lien under this Act for the amount due him for such material, machinery, equipment, supplies, or labor, and interest from the date same was due." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 82, par. 72.)

Section 1 of the Act defines "person" as "one or more individuals, corporations, co-partnerships or other associations of persons." (Ill. Rev. Stat. 1987, ch. 82, par. 71(a).) No explicit language in the Act details whether a "person" may be a part owner of the property in question. The only case to address this issue was *Kinne v. Duncan* (1942), 315 Ill. App. 577, *aff'd in part & mod. in part on other grounds* (1943), 383 Ill. 110.

In *Kinne*, the appellate court interpreted the Act to exclude part owners as lienors. There, the court held: "We do not think that our own statute contemplates that a part owner of an oil and gas lease who has furnished labor and materials for the development of such lease is entitled to a statutory lien for such labor and materials as against his co-owners." (315 Ill. App. at 593.) In the case before us, the appellate court unequivocally overruled *Kinne*, stating that *Kinne* was "not supported by the modern day realities of ownership and financing of oil and gas leaseholds, or the language of the Oil and Gas Lien Act." 159 Ill. App. 3d at 338.

The language of the Act, like other lien statutes, must be strictly construed when determining the class of persons entitled to its protections. (4 W. Summers, The Law of Oil & Gas §701, at 211 (1962); 58 C.J.S. *Mines & Minerals* §260 (1948).) Because there are no cases in which this court has interpreted section 2 of the Act, we

look to our sister States who have similar oil and gas lien statutes for guidance. We find authority from Oklahoma, Louisiana, Kansas, and Arkansas instructive in this case.

In Oklahoma, the oil and gas lien statute is worded similar to our own act (see Okla. Stat. tit. 42, §144 (1979)). Oklahoma case law and commentators agree that their statute must be strictly construed when deciding who is entitled to the lien. (*Davidson Oil Country Supply Co. v. Pioneer Oil & Gas Equipment Co.* (Okla. 1984), 689 P.2d 1279, 1280-81; Kinzie & Dancy, *The Statutory Oil & Gas Lien in Oklahoma*, 20 Tulsa L.J. 179, 187 (1984).) In *Uncle Sam Oil Co. v. Richards* (1916), 60 Okla. 63, 158 P. 1187, the Oklahoma Supreme Court held that a co-owner of an oil and gas lease was not entitled to impress a statutory lien against a fellow co-owner. *Uncle Sam Oil Co.* was relied on by our appellate court in deciding *Kinne*, 315 Ill. App. at 593, and followed by a United States bankruptcy court applying Oklahoma law. (*In re George Rodman, Inc.* (Bankr. W.D. Okla. 1984), 38 Bankr. 826.) The Oklahoma Supreme Court, however, expressly overruled *Uncle Sam Oil Co.* in *Amarex, Inc. v. El Paso Natural Gas Co.* (Okla. 1987), 772 P.2d 905. There the court stated:

> "[W]e find that the distinction between an operator who owns an interest in the lease and an operator who does not own an interest in the lease is not significant. Section 144 begins with the words 'Any person, corporation, or copartnership'. There is no indication within the statute that these words were intended to mean 'any person except an owner.' ***
>
> * * *
>
> *** [N]othing in 42 O.S. 1981 §144, under the strictest construction, precludes the operator from asserting a statutory oil and gas lien against a working interest owner's leasehold interest." *Amarex*, 772 P.2d at 909-10.

In Louisiana, the courts also allow an owner-operator to claim a lien (or "privilege" as a lien is known under civil law (see 51 Am. Jur. *Liens* §11 (1970))) against a co-owner's fractional interest. In *Kenmore Oil Co. v. Delacroix* (La. App. 1975), 316 So. 2d 468, the court stated: "We can see no reason *** why the operator should not enjoy the privilege [lien] or why he might not exercise it against less than all of the working interest." (316 So. 2d at 469.) Both *Kenmore Oil Co.* and *Blasingame v. Anderson* (1959), 236 La. 505, 108 So. 2d 105, were relied on by our appellate court in the case before us and both stand for the proposition that an owner-operator of an oil and gas lease may attach a lien upon his co-owner's fractional interest.

In Kansas, an owner-operator may not claim a lien against an entire oil and gas leasehold in which he has an interest. (*Gaudreau v. Smith* (1933), 137 Kan. 644, 21 P.2d 330.) Nevertheless, the Kansas Supreme Court in *Davis v. Sherman* (1939), 149 Kan. 104, 86 P.2d 490, suggested in *dicta* that a lien claimed only upon the fractional interest of a cotenant and not upon the whole leasehold might be enforceable.

The Arkansas Supreme Court in *Fife v. Thompson* (1986), 288 Ark. 620, 708 S.W.2d 611, allowed a lien to be impressed upon the fractional interest of a party who, although not technically a cotenant of the lienor, had a status that was "tantamount to co-tenancy." (288 Ark. at 621, 708 S.W.2d at 611-12.) The lien in *Fife* apparently was not statutory, but rather one based on the equitable remedies of contribution and accounting between cotenants.

We find the authorities cited above persuasive. Strictly construing our own act, we fail to see how it could preclude a contractor who is also a part owner from securing a lien against the interests of his co-own-

ers. On the contrary, we find that Carey is within the class of persons the Act is intended to benefit.

Appellants EFC and FMB contend that the Act could not entitle a co-owner such as Carey to a statutory oil and gas lien because Carey cannot fix a lien against its own property. (See 51 Am. Jur. *Liens* §13 (1970).) Here, however, Carey was not acting against its own interests; instead, Carey sought the lien against only the fractional interests of certain cotenants. Moreover, the reason often given why one cannot impress a lien against a co-owner is the concept of cotenancy being *undivided* fractional interests, with a right of all cotenants to possess the whole of the estate. Nevertheless, the concept of an undivided fractional interest does not prevent a judgment lien from being executed against such interest of one cotenant. (See 46 Am. Jur. *Judgments* §259 (1969).) Nor does this concept hinder one seeking contribution from a cotenant (*Young v. McKittrick* (1932), 267 Ill. App. 267) or, under appropriate circumstances, enforcing an equitable lien against a cotenant (*Sterling Savings & Loan Association v. Schultz* (1966), 71 Ill. App. 2d 94). Furthermore, when an owner-operator of an oil and gas lease secures a lien right contractually from his co-owners, this lien is enforceable against the co-owner's fractional interest. (*In re Wilson* (Bankr. N.D. Tex. 1987), 69 Bankr. 960; Kinzie & Dancy, *The Statutory Oil & Gas Lien in Oklahoma*, 20 Tulsa L.J. 179, 187-88 (1984).) We see no reason why we should treat a statutory oil and gas lien any differently.

EFC and FMB further contend that the appellate court erred in reversing the trial court because the legislature's tacit approval of *Kinne* should be accorded judicial deference. They argue that since *Kinne*, the legislature has had ample opportunities to amend the Act to include owner-operators as lienors, and despite numerous changes to other provisions of the Act, the legisla-

ture has declined to do so. We agree that when our courts have repeatedly construed a provision of a statute and legislative action has not contravened the construction adopted, it will be presumed that the legislature has acquiesced to our exposition of legislative intent. (See, *e.g.*, *People v. Harrison* (1970), 46 Ill. 2d 348, 353.) When this occurs, this court is reluctant to reverse settled law. In this case, however, no repeated construction exists; the only decision interpreting section 2 of the Oil and Gas Lien Act is *Kinne*, an appellate court decision from 1942, which was diminished in importance by its modification in this court. We do not feel that *Kinne* is indicative of legislative intent and therefore do not hesitate in affirming a justifiable reversal of its holding.

Finally, EFC and FMB insist that if we hold that the Oil and Gas Lien Act entitles an owner-operator such as Carey to a lien, then our ruling must be applied prospectively only. In *Chevron Oil Co. v. Hudson* (1971), 404 U.S. 97, 106-07, 30 L. Ed. 2d 296, 306, 92 S. Ct. 349, 355, the United States Supreme Court listed three factors it uses for determining when a decision should be applied prospectively. There, the Court stated:

> "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation], or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation]. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' [Citation.] Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a hold-

ing of nonretroactivity.' [Citation.]" (404 U.S. at 106-07, 30 L. Ed. 2d at 306, 92 S. Ct. at 355.)

This court has adopted the *Chevron* rationale. (See, *e.g.*, *Elg v. Whittington* (1987), 119 Ill. 2d 344, 357; *Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422, 426-27.) Although all of the factors must be considered, we need look no further than the third factor enunciated in *Chevron*: whether our decision would "produce substantial inequitable results if applied retroactively." While EFC, FMB and other similarly situated security interest holders will no doubt be affected by Carey's and other owner-operators' liens, we find no substantial inequity arising from our decision today. Furthermore, even if we were to apply this rule prospectively, it would not change the outcome here, as EFC and FMB urge it should. On those occasions when prospective application is warranted, the holding of the court still controls the case at bar; to not apply the rule would render it *dictum* and deprive the challenger the fruits of his efforts in questioning the old, erroneous rule. (See *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 28.) In any event, we decline to apply our holding in this case prospectively.

For the reasons stated above, we affirm the appellate court's reversal of the trial court and remandment of the cause to the circuit court of Macon County.

*Appellate court affirmed.*

JUSTICE MILLER took no part in the consideration or decision of this case.