(No. 37180.—

The County Board of School Trustees of Du Page County, Appellee, *vs.* Clifford W. Boram *et al.,* Appellants.

*Opinion filed November 30, 1962.*

RIGHEIMER & REIGHEIMER, of Chicago, (FRANK S. RIGHEIMER, JR., of counsel,) for appellants.

FAWELL AND LARSON, of Naperville, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an action by the County Board of School Trustees of Du Page County to condemn 5.16 acres of

defendants' land for the use and benefit of School District No. 10. Defendants appeal from the judgment entered upon the jury verdict awarding them $15,000.

On and prior to April 10, 1960, Clifford Boram was the owner of the condemned tract, with legal title vested in Chicago Title & Trust Company, as trustee. Wesley Luehring, a real-estate broker, claims to have bought the tract on April 10 for $30,000 by payment of $1 down and giving a note due on or before 2 years from date, without interest, for the balance. Defendants Boram, Luehring and the title company filed a traverse and motion to dismiss upon several grounds.

It is first contended that there was no *bona fide* attempt to agree upon the compensation as required by section 2 of the Eminent Domain Act. (Ill. Rev. Stat. 1961, chap. 47, par. 2.) The president of the board of district No. 10 attempted by telephone and letters from December 1959 to March 1960 to discuss purchase with Boram but he refused to negotiate. On March 28, 1960, Boram wrote to the president, "I have entered into an option contract with Wesley Luehring." A conversation was then had with Luehring and when he said he would take $6500 per acre, the president said he would submit it to the board even though he thought it was too high and would vote against it. He requested that the offer to sell be put in writing. When he heard nothing after a lapse of several weeks, he wrote to Luehring asking for a letter stating his demand of $6500 per acre. Luehring treated the letter as an offer of that amount and replied stating that he would accept it and would cooperate with the school board. On July 14 counsel for the board wrote the title company that it was impossible to obtain agreement on compensation from the interested parties and that a resolution to condemn had been adopted on July 10.

Under the circumstances, we are of the opinion that the actions of the school authorities constituted a *bona fide*

attempt to agree upon compensation. Boram refused to negotiate. According to him he gave an option to Luehring while the latter says he purchased the property by making a down payment of $1 and giving a note for the balance. There was no written contract, but Luehring testified that he put up $30,000 in tax free bonds with a bank under a verbal agreement by which they were to be delivered only if he died. He testified vaguely that in the meantime the $30,000 credit could be used by Boram for the purchase of a farm. Luehring never offered to negotiate and was adamant on the only figure which he ever suggested, which was $6500 per acre. Thus, the school authorities not only had difficulty in ascertaining the true owner but after attempting for more than six months to negotiate, they were faced with a single demand which apparently was beyond what they were willing to pay.

Defendants insist that an offer was a prerequisite to the right to maintain condemnation proceedings and rely upon *City of Chicago* v. *Harrison-Halsted Building Corp.*, 11 Ill.2d 431. In that case the issue was not whether an offer had been made but whether proof of the amount of the offer could be introduced into evidence on the question of just compensation. There is a statement in that opinion that an offer is compulsory. It was not necessary to the opinion, was an inadvertent statement, and is specifically disavowed. The statute does not require an offer but only requires that before exercising the right of eminent domain the authorities shall first attempt to agree on the amount of compensation. The making or not making of an offer is an important factor in determining whether a *bona fide* attempt to agree had been made, but an offer is not necessary where, as here, it is clear from the acts of the parties that it would be futile.

The original petition failed to allege the authority of the petitioner and the purpose for which the property was to be taken as required by section 2 of the act. These de-

fects were remedied by amendment when the omissions were discovered. Defendants' contention that these allegations were jurisdictional rather than procedural is not well taken since section 5 of the act provides for amendments "whenever necessary to a fair trial and final determination of the questions involved." As noted in *Central Illinois Electric and Gas Co.* v. *Scully,* 17 Ill.2d 348, the requirement for specific objections in a motion to dismiss is for the purpose of giving petitioner an opportunity to correct by amendment.

The argument that property cannot be condemned without a prior referendum is without merit. Contrary to former procedure, the School Code in 1959 (Ill. Rev. Stat. 1959, chap. 122, pars. 7—17, 14—7, and 14—9) provided that school boards may select and purchase school house sites without submission of the question to the electorate. Section 7—17 (par. 7—17) authorized condemnation by a school board and payment of an award. In *Trustees of Schools* v. *Berryman,* 325 Ill. 72, this court held that the word "purchase" under another statute encompassed both voluntary and involuntary acquisition.

The tract involved is vacant and located in an area improved with substantial single-family dwellings. Petitioner's two valuation witnesses testified that in their opinion the tract was worth $3000 per acre or $15,000, while those who were called by defendants fixed the value at $6250 per acre and $34,000, respectively. Defendant Luehring valued it at $35,000. Defendants argue that the verdict was not within the range of the testimony. This is predicated upon the assumption that the testimony of the lowest value was $3000 per acre and that value multiplied by 5.16 acres produces $15,480, or $480 more than the verdict. While the evidence established that the actual acreage was 5.16, it was referred to during the trial as containing 5 acres. Even defendants' counsel in closing argument referred to it as "this 5 acre tract." Petitioner's

valuation witnesses each fixed the value at "$3000 per acre or $15,000." We are of the opinion that the total amount of the valuation takes precedence over the per-acre valuation and that the verdict is within the range of the testimony.

It is next argued that the verdict was contrary to the weight of the evidence. There would be little gain in analyzing the background of the expert opinion witnesses or in detailing their sales of alleged comparable tracts with the view of determining which had the most expertise. The jury was in the best position to appraise their capabilities and we will not disturb the verdict where it is within the range of the testimony, unless the verdict was the result of passion or prejudice.

Defendants assert that the verdict was the result of passion and prejudice engendered by improper remarks, questions and argument of petitioners counsel, and by erroneous and prejudicial rulings and remarks of the court.

The several remarks of which they complain had to do with the belief of members of the board of education that the property was worth no more than $3000 per acre and their interest in the outcome. When objection was made, only after several instances of this kind, it was sustained and there was no further use of this type of argument. Additionally, it is argued that statements about the beliefs of the school board amounted to testimony by counsel, and comes within the proscription of such cases as *Chicago North Shore and Milwaukee R.R. Co.* v. *Chicago Title and Trust Co.*, 328 Ill. 610, and *Mattice* v. *Klawans*, 312 Ill. 299. At no time did petitioner's counsel state his own opinion nor put his reputation or integrity upon the supposed opinion of the board members. Each of the parties came perilously close to getting out of the record in drawing inferences from the evidence, but an objective view of the whole record does not indicate that the defendants had other than a fair trial.

It would unduly lengthen this opinion to comment upon each of the great number of alleged erroneous and prejudicial rulings of the trial judge, which defendants say compounded the prejudice engendered by counsel for petitioner. This was a hard fought case with neither counsel giving any quarter. The trial judge was remarkably patient and his actions and rulings do not bear out the charge of prejudice. We are of the opinion that the case was fairly tried and that the verdict was not the result of passion or prejudice.

Defendants' final contention is that petitioner failed to pay the compensation award within the time provided by the various judgment orders, and defendants, therefore, were entitled to have the proceedings declared abandoned and to have attorneys fees, costs and expenses taxed against petitioner as provided in section 10 of the Eminent Domain Act. Ill. Rev. Stat. 1959, chap. 47, par. 10.

Section 10, after providing for the entry of an order fixing the time within which the compensation award shall be paid, provides "that if * * * the petitioner shall dismiss said petition before the entry of such order or shall fail to make payment of full compensation within the time named in such order, that then such court or judge shall, upon application of the defendants to said petition or either of them, make such order in such cause for the payment by the petitioner of all costs, expenses and reasonable attorney fees of such defendant or defendants paid or incurred by such defendant or defendants in defense of said petition, as upon the hearing of such application shall be right and just, and also for the payment of the taxable costs." While the section does not specifically state that the failure of petitioner to pay full compensation within the time fixed by the court shall constitute an abandonment, the obvious intent of the section is that such failure does constitute an abandonment and this court has so held in several cases. *Comrs. of Lincoln Park* v. *Schmidt,* 386

Ill. 550; *Chicago Great Western Railroad Co.* v. *Ashelford,* 268 Ill. 87.

The record shows that on May 12, 1961, the court pronounced judgment fixing the compensation award at $15,000; on June 5 defendants filed a post-trial motion requesting judgment of $31,250 notwithstanding the verdict or in the alternative a new trial; on June 9 they filed a supplemental post-trial motion; on October 18 they gave notice that on November 9 they would ask the court to hear their post-trial motion; on November 9 the court set the post-trial motion for November 24; on November 24 the court entered an order *nunc pro tunc* as of May 12 fixing the time for payment of the award at 180 days; on December 7 the court overruled the post-trial motion; on December 11 defendants filed a motion and notice thereof asking for an order pursuant to section 10 of the Eminent Domain Act for the payment of their attorneys fees, costs and expenses on the theory that petitioner had abandoned the proceedings by not depositing the amount of the compensation award within the time specified in the judgment order of November 24, *nunc pro tunc* as of May 12; on December 14 petitioner deposited $15,000 with the county treasurer; on December 15 the court asked for a written brief on the matter; on December 23 the court entered an order, *nunc pro tunc* as of May 12, fixing the time for payment of the award at 220 days; on January 26, 1962, the court denied defendants' motion for an order pursuant to section 10 and on January 30 defendants filed their notice of appeal.

It would unduly prolong this opinion to set forth the many conclusions and theories of the parties as to the effect of the various orders and motions. It is sufficient to state that both parties and the trial court were confused as to when the time period for payment of the award would begin to run.

This court has stated on numerous occasions that the

purpose of setting a time certain within which full compensation must be paid was to eliminate the evils that arose from uncertainties created when the court in pronouncing judgment was not required to fix a definite time. (*Com'rs. of Lincoln Park* v. *Schmidt,* 386 Ill. 550; *Village of Palatine* v. *Dahle,* 385 Ill. 621; *Chicago Great Western Railroad Co.* v. *Ashelford,* 268 Ill. 87.) An examination of the cases in which the question has arisen reveals that the time limitation has been held to start when the amount of full compensation has finally been determined. (See, *e.g., City of Winchester* v. *Ring,* 315 Ill. 358; *Forest Preserve Dist.* v. *Kean,* 303 Ill. 293; *Village of Baylis* v. *Orr,* 291 Ill. 201; *Chicago Great Western Railroad Co.* v. *Ashelford,* 268 Ill. 87; *Village of Prairie Du Rocher* v. *Schoening-Koenigsmark Milling Co.* 251 Ill. 341.) It seems apparent that the time within which the compensation award must be paid would not become important until it is finally determined what the amount of the compensation award is to be.

In this case a judgment fixing the compensation award was entered on May 12, 1961. If no post-trial motion or appeal had been filed, the compensation award would have been determined with finality as of that date. Defendants filed a post-trial motion, however, and thereafter this appeal. This compensation award has not therefore as yet been determined with finality and the time limitation will not begin to run until it has been determined.

The court in its order of May 12, 1961, did not set a time within which the award was to be paid but properly handled this omission in its order of November 24. (*Chicago and Western Indiana Railroad Co.* v. *Guthrie,* 192 Ill. 579.) The *nunc pro tunc* feature of the November 24 order as well as of the December 23 order is immaterial because the time limitation in either order would not begin to run until the amount of the compensation award is finally determined. Under the circumstances of this case the trial court was not justified in changing the time period

of 180 days to that of 220 days and the 180-day period is the one to be applied when the award of compensation in this case becomes final. See *Village of Baylis* v. *Orr*, 291 Ill. 201.

For the reasons hereinbefore given, the judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*