LEONARD CONTRERAS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (City Foods, Appellee.)

First District (Industrial Commission Division)   No. 1—98—1357WC

Opinion filed July 27, 1999.—Rehearing denied September 8, 1999.

Robert B. Williams and Michael Fries, both of Williams & Marcus, Ltd., of Chicago, for appellant.

Richard A. Domash, of Law Office of Stuart M. Pellish, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Leonard Contreras, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) for injuries sustained while employed by City Foods as a laborer. City Foods is a meat packing house. On August 8, 1989, Contreras was cleaning a refrigeration unit when he fell from a ladder onto a concrete floor. He was seen by Dr. Robert Sawchyn, who prescribed physical therapy. He returned to work on October 24, 1989, under light duty restrictions. After several days, Contreras returned to Dr. Sawchyn, who prescribed more physical therapy and took him off work until December 18, 1989, at which time he was released for light duty work. When he returned to work he was assigned a job that he could not perform. He was again taken off work from December 15, 1989, through September 15, 1990. During this time he underwent a pain treatment program. An MRI of the lumbar spine, performed on February 22, 1990, revealed degenerative changes from L3-L4 through L5-S1. Contreras filed two claims alleging injuries to his back (90WC447) and both hands (90WC446).

He returned to work on October 1, 1990. On January 17, 1992, Contreras was injured when a stack of pails filled with meat, weighing between 400 and 500 pounds, fell on him, striking him in the back and pinning him between a table and the floor. When he got up, he noticed pain in his back and legs. He attempted to work, but was unable to and went home. Contreras filed a third claim alleging injuries to his lower back and both legs (92WC22710).

All three claims were consolidated for hearing purposes. A hearing was held on September 20, 1993. Mary Ellen Nelson, a court reporter for the Industrial Commission (Commission), transcribed the proceedings (Nelson transcript). Contreras testified and the cause was continued. A second hearing was held on December 15, 1993, this one transcribed by Donna Marie Bishop, also a court reporter for the Commission (Bishop transcript). As a result of his accidents, the arbitrator awarded Contreras 10 weeks of temporary total disability (TTD) benefits in 90WC446, 47$^6$/7 weeks of TTD benefits in 90WC447, and 16$^1$/7 weeks of TTD benefits in 92WC22710. The arbitrator also found him to be permanently and totally disabled. The arbitrator filed his decisions on January 27, 1994. Contreras received them on February 7, 1994, and City Foods received them on February 14, 1994. On March 16, 1994, City Foods filed a petition for review in which it requested the Commission to furnish an original and one copy of the proceedings

on arbitration. In late April or early May 1994, Nelson left the Chicago area and moved to Boston, Massachusetts.

On October 19, 1995, 19 months after City Foods filed its petition for review, Contreras filed a motion to dismiss City Foods' petition for review, arguing that City Foods had not yet authenticated or tendered to him the transcript of the arbitration proceedings. Contreras also filed a petition seeking attorney fees and penalties. The Bishop transcript was filed on July 28, 1995. The Nelson transcript was filed on October 30, 1995. On November 22, 1995, Contreras filed an amended motion to dismiss, arguing that City Foods failed to exercise due diligence in prosecuting its review, resulting in extreme financial harm.

An evidentiary hearing on Contreras' amended motion to dismiss was held on December 5, 1995. At the hearing, Contreras introduced the expert testimony of Jeanmarie Calcagno, an attorney who practices primarily in the area of workers' compensation cases. Calcagno testified that she had a professional relationship with Mary Ellen Nelson contemporaneous with the Contreras case. In one instance, she sought a transcript and was informed that Nelson had moved to Massachusetts. She obtained Nelson's address through the official court reporter's office and subsequently contacted Nelson about the transcript. Within four to eight weeks Calcagno received a copy of the transcript in question. In another case, Calcagno had arranged for Nelson to fly to Chicago and testify before the Commission regarding her preparation of a transcript. Ultimately, her testimony was not needed.

Calcagno testified that if she did not have a copy of the requested transcript of proceedings two weeks prior to the return date on the request for review, she would contact the reporter and file a motion to extend time for filing an authenticated transcript. Calcagno stated that it would be inconsistent with an attorney's duty of due diligence merely to rely on the Commission to obtain the transcript without personally contacting the court reporter.

City Foods introduced the testimony of Marvin Goins. Goins was the supervisor-court reporter for the Commission. Goins periodically spoke with City Foods' attorney, Geraldine Balow, about the status of the Contreras transcript, but those conversations did not take place until May or June 1995, and Goins characterized them as "informal" and "in passing." Goins could not recall any conversation with City Foods' attorney prior to that time. Attorney Balow stipulated that she came on the case in May 1995. The only written request by City Foods regarding the Contreras transcript was dated September 15, 1995.

On March 28, 1996, the Commission denied Contreras' motion, finding:

"1. That any delay in the completion of the transcript was the responsibility of the Commission;

2. That the Commission was aware of the problem occasioned by the out-of-state move by the former Commission court reporter prior to the completion of ordered transcripts and was further advised by respondent;

3. That both the Commission and respondent acted in a manor [*sic*] reasonably expected to promote rapid completion of the transcript, but the direct control over the former state employee had been lost and the remaining influence was limited;

4. That respondent demonstrated due diligence in its ordering and subsequent pursuit of the transcript; and

5. There is no credible evidence of intentional delay by the respondent."

The Commission also denied Contreras' petition for attorney fees and penalties. In its August 30, 1996, decisions, the Commission modified the TTD awards in all three cases and found that Contreras failed to prove that he was permanently and totally disabled. With respect to permanent disability, the Commission determined that Contreras failed to show that he fell into the "odd-lot" category. The Commission found Contreras to be permanently and partially disabled to the extent of 40% of the person as a whole. Contreras thereafter filed a timely petition for judicial review.

On review, City Foods argued that the Commission's March 28, 1996, order was a final and appealable order and that pursuant to section 19(f)(1) Contreras had 20 days in which to seek judicial review. Because he failed to do so, City Foods argued, the circuit court did not have subject matter jurisdiction. The circuit court ruled that the Commission's March 28, 1996, order was not a final and appealable order because it did not dispose of the merits of the case, and that it had jurisdiction to review the Commission's August 30, 1996, decision.

The circuit court also ruled that the Commission correctly denied Contreras' October 19, 1995, motion to dismiss. The circuit court found that the filing period set forth in section 19(b) was rendered inapplicable by the following stenographic stipulation contained in the request for hearing:

"Both parties agree that if either party files a Petition to Review the award and orders a transcript of evidence pursuant to the law and the rules of the Industrial Commission and the reporter provided by the Industrial Commission does not complete or furnish a transcript of evidence within the time fixed by law, the opposite party will not raise the question of jurisdiction of the Industrial Commission to review said award of the Arbitrator upon the ground that said transcript of evidence was not timely filed."

The circuit court also ruled that the Commission's determination that City Foods had exercised due diligence was not contrary to the manifest weight of the evidence. The circuit court further found that the Commission decisions denying Contreras' petition for fees and penalties was not contrary to the manifest weight of the evidence, nor was its decision reducing his permanent and total disability award to permanent partial disability to the extent of 40% of the person as a whole.

On appeal, Contreras argues first that the Commission abused its discretion when it denied his October 19, 1995, motion to dismiss. He contends that the stenographic stipulation into which the parties entered relates only to jurisdiction, and neither relieves a party of its obligation to exercise due diligence in the prosecution of its case nor prevents a party from raising the issue of due diligence in a motion to dismiss. Contreras further contends that City Foods did not, in fact, exercise due diligence and that the reasons the Commission gave for denying his motion to dismiss are not factually supported by the record.

In response to Contreras' arguments, City Foods contends that the stenographic stipulation was not a waiver of jurisdiction but an agreement by both parties and the Commission to accept substantial compliance with the filing requirements of section 19(b). City Foods maintains that the Commission has the discretion to allow a delay in the filing of the transcript for good cause and that the question of whether a litigant has demonstrated good cause is a question of fact for the Commission.

■ Section 19(b) of the Act provides in pertinent part:

"Unless a petition for review is filed by either party within 30 days after the receipt by such party of the copy of the decision and notification of time when filed, and unless such party petitioning for a review shall within 35 days after the receipt by him of the copy of the decision, file with the Commission either an agreed statement of the facts appearing upon the hearing before the Arbitrator, or if such party shall so elect a correct transcript of evidence of the proceedings at such hearings, then the decision shall become the decision of the Commission and in the absence of fraud shall be conclusive." 820 ILCS 305/19(b) (West 1994).

The right to have an award reviewed by the Commission is lost by a failure to file an agreed statement of facts or a transcript of the evidence within the time period specified in section 19(b). *Corn Belt Motor Co. v. Industrial Comm'n*, 389 Ill. 320, 59 N.E.2d 652 (1945). The timely filing of such statement of facts or transcript is a prerequisite to the Commission's obtaining jurisdiction. See *Gould Construction*

*Co. v. Industrial Comm'n,* 311 Ill. 472, 143 N.E. 73 (1924). However, the stenographic stipulation contained in the preprinted request for hearing form specifically provides that if either party files a petition for review of the arbitrator's decision, the opposite party will not raise the question of jurisdiction on the ground that the transcript was not timely filed.

■ Contreras does not argue that the Commission lacked jurisdiction, however. Instead, he argues that City Foods failed to exercise due diligence in the prosecution of its review and that the stipulation cannot be read to excuse a party's obligation to exercise due diligence. We agree. The stipulation clearly states that in the event either party fails to timely file a transcript, the other party will not challenge jurisdiction. The Commission's jurisdiction is not at issue. What is at issue is City Foods' diligence in prosecuting the review. Just as a petitioner may lose his right to proceed before the Commission by failing to file a timely petition for review, he may also lose his right to be heard by failing to exercise due diligence in pursuing his cause before the Commission. See *Bromberg v. Industrial Comm'n,* 97 Ill. 2d 395, 454 N.E.2d 661 (1983). Nothing in the language of the stipulation excuses a party from exercising due diligence. Further, to read it as eliminating any deadline for the filing of a transcript would permit and even encourage delay tactics on the part of a petitioner. The Act is a humane law of a remedial nature, whose fundamental purpose is to protect employees by providing efficient remedies and *prompt* and equitable compensation for their injuries. *Kelsay v. Motorola, Inc.,* 74 Ill. 2d 172, 384 N.E.2d 353 (1978). By its very nature, the Act mandates a duty of due diligence. To excuse parties from the duty of due diligence would undermine this purpose.

■ With respect to the question of whether City Foods exercised due diligence, we conclude that it did not. City Foods provides no reasonable explanation for taking so long to obtain the transcript. Although the petition for review was filed on March 19, 1994, Nelson did not move out of the Chicago area until late April or early May 1994. Attorney Calcagno, testifying as an expert witness on the handling of workers' compensation cases, opined that City Foods did not demonstrate due diligence. The testimony of Marvin Goins, called as a witness by City Foods, demonstrates that City Foods did nothing until June 1995, and then only made casual inquiries "in passing." The Bishop transcript was filed on July 28, 1995, 16 months after City Foods filed its petition for review. City Foods made no written inquiry regarding the Nelson transcript until September 15, 1995, and that transcript was not filed until October 30, 1995. We also note that pursuant to section 19 of the Act:

"If a reporter does not *for any reason* furnish a transcript of the proceedings before the Arbitrator in any case for use on a hearing for review before the Commission, within the limitations of time as fixed in this Section, the Commission may, in its discretion, order a trial de novo before the Commission in such case upon application of either party." (Emphasis added.) 820 ILCS 305/19(e) (West 1994). Notwithstanding a delay of some 16 months, City Foods did not avail itself of that remedy. Ironically, Contreras did file a motion seeking *de novo* review, but the Commission denied it.

The Commission gave no evidentiary basis for its conclusion that City Foods exercised due diligence. It made no mention of Goins' testimony and completely ignored the uncontradicted and unrebutted testimony of Contreras' expert, Calcagno. Although the Commission is not compelled to accept testimony simply because it is not rebutted, neither can it simply ignore it. See *Sorenson v. Industrial Comm'n*, 281 Ill. App. 3d 373, 666 N.E.2d 713 (1996). In addition, the circuit court specifically stated that Calcagno's testimony would not be considered. By so doing, the circuit court compounded the Commission's error.

The record demonstrates that City Foods failed to exercise due diligence in the prosecution of its review before the Commission, and the Commission's decision to the contrary was an abuse of discretion, as was its denial of the motion seeking *de novo* review. The decision of the circuit court and the Industrial Commission are reversed, and the decision of the arbitrator is reinstated.

■ Generally, judicial decisions are given retroactive as well as prospective application. *Brown v. Metzger*, 104 Ill. 2d 30, 470 N.E.2d 302 (1984). This court has the inherent authority to give a decision prospective application only. See *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 679 N.E.2d 1224 (1997). This court has never explicitly acknowledged that a party has an affirmative duty under the Act to proceed with diligence in fulfilling requirements necessary to perfect and prosecute a review before the Commission, although such can be implied from *Bromberg*. Under such circumstances, we believe it appropriate to limit our holding to prospective application only.

Circuit Court and Industrial Commission reversed; arbitrator's award reinstated.

HOLDRIDGE and COLWELL, JJ., concur.

JUSTICE RAKOWSKI, dissenting:
The majority opinion holds that a party or his attorney has a duty

to exercise due diligence to insure that the transcript is prepared in a reasonable time even though the obligation to prepare and furnish the transcript rests with the Commission. The opinion does not specify exactly what the employer should have done, only that whatever it did do was insufficient. Presumably, the employer should have made phone calls and/or sent letters to the Commission and the court reporter. The opinion also relies on the testimony of Jeanmarie Calcagno, an attorney specializing in workers' compensation law, who testified that she had a professional relationship and contact with Mary Ellen Nelson prior to and contemporaneous with the events of the instant case. She testified that she had obtained Mary Ellen Nelson's address through the official reporter's office. She then contacted Nelson and was able to obtain a transcript within 60 days. Presumably, the majority opinion requires that employer's counsel should have done the same. I respectfully disagree.

The standard "Petition For Review of Decision of Arbitrator and Order For Transcript" requests the Commission to furnish an original copy of proceedings on arbitration. By signing the petition, the party or attorney also guarantees payment for the cost of the preparation of the transcript. Also, in accordance with section 19(b) the petition requests that the Commission enter an order extending the time for the filing of this transcript for 30 days in addition to the 35 days allowed by statute and the stipulation of the parties. See 820 ILCS 305/19(b) (West 1996). As such, the requirement for the filing of a transcript is 65 days. In this case, and in many cases, however, the parties entered into a stipulation waiving the time requirement.

The law is clear that the responsibility to furnish a transcript lies solely with the Industrial Commission. Section 16 states:

"The Commission at its expense shall provide an official court reporter to take the testimony and record of proceedings at the hearings before an Arbitrator or the Commission, who shall furnish a transcript of such testimony or proceedings to either party requesting it, upon payment therefor at the rate of $1.00 per page for the original and 35 cents per page for each copy of such transcript. Payment for photostatic copies of exhibits shall be extra." 820 ILCS 305/16 (West 1996).

Section 7040.10 of the Administrative Code provides in part:

"b. Order of Arbitration Transcript

1) Stenographic reports of proceedings before the Industrial Commission shall be furnished the parties *only* upon written order filed with the Commission.

2) For purposes of perfecting a review, an arbitration transcript must be ordered within the time fixed by statute.

The estimated cost of the transcript of proceedings may be obtained from the Industrial Commission, and the party requesting such transcript shall deposit a sum of money covering the estimated cost before the reporter shall be required to complete the transcript. An order entered pursuant to Section 20 of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.20) may be submitted for said monetary deposits." (Emphasis added.) 50 Ill. Adm. Code § 7040.10 (eff. August 1, 1990).

In accordance with the above, any request for transcript must be initiated by filing a request with the Industrial Commission. It is also clear that the responsibility for furnishing a transcript lies solely with the Commission.

In the instant case, rather than being an abuse of discretion, the Commission's decision is perfectly reasonable. The decision states that any delay in the completion of the transcript was its responsibility, that it was aware of the problem occasioned by the out-of-state move of the former court reporter, and that it was further advised of this fact by the respondent. The decision goes on to state that because of a lack of control over the former employee, it was unable to secure the transcript until October of 1995. The order concludes that respondent did not demonstrate a lack of diligence and there is no credible evidence of intentional delay by the respondent.

Although it is true that attorney Calcagno was able to secure a transcript by Mary Ellen Nelson in a much shorter time than the employer's counsel in the instant case, in no way should this be the standard that all parties and attorneys are required to follow. More importantly, somebody has to be first and somebody has to be last. Possibly if the transcript requests from Calcagno and other regular workers' compensation attorneys were not put ahead of the instant employer's request, the transcript would have been finished earlier. Many claimants before the Commission are *pro se.* Many are represented by counsel who only handle a few workers' compensation cases in a year. Unlike attorney Calcagno, who specializes in workers' compensation law, these people do not have a working professional relationship with the 26 court reporters employed by the Industrial Commission.

I see no reason to impose a heretofore unknown burden on counsel. No Illinois case has ever held that a party has an obligation to exercise due diligence to ensure a prompt transcript. The reason of course is axiomatic: the obligation to furnish the transcript rests solely with the Commission. Moreover, the ability to spur a recalcitrant court reporter is better handled by the employer (or ex-employer in this case) as opposed to a party or party's attorney.

The only case cited by the majority, *Bromberg v. Industrial Comm'n*, 97 Ill. 2d 395, 454 N.E.2d 661 (1983), is inapposite. There the Commission dismissed claimant's petition for review following his continuous failure to appear on four occasions. Unlike the instant case, the obligation for Bromberg to appear was his own obligation. Here the obligation to produce a transcript belongs to the Commission.

I respectfully suggest that the Commission's decision in the instant case makes sense. In accordance with section 16, the Commission admits that the transcript is its obligation and that a party's right to review an arbitrator's decision will not be cut off because the Commission is temporarily unable to furnish a transcript. Rather, in accordance with the parties' jurisdictional stipulation, the Commission will preserve the parties' right to review until a transcript can be obtained. In the event that it is determined that a transcript cannot be obtained "the Commission may, in its discretion, order a trial de novo before the Commission in such case upon application of either party." 820 ILCS 305/19(e) (West 1996).

Although the majority holds that it was an abuse of discretion to deny Contreras' motion for *de novo* review, I respectfully disagree. I suggest that a *de novo* hearing before the Commission should only be held in those instances where a transcript cannot be obtained. In this case, apparently the Commission thought it would be able to secure a transcript and eventually it did.

For all these reasons, I would affirm the judgment of the circuit court.

McCULLOUGH, P.J., joins in this dissent.

PRESIDING JUSTICE McCULLOUGH, dissenting:

I join in Justice Rakowski's dissent. I write separately only to stress the importance of our opinion. This decision, as pointed out, will have strong ramifications important to all involved in workers' compensation, especially *pro se* claimants.

By this decision, the Commission will be permitted to ignore its responsibility mandatorily required by section 16 of the Act and section 7040.10 of the Administrative Code. We are introducing a new stumbling block, and as suggested by the dissent, transferring the statutory responsibility from the Commission to the parties.

Further support for the Commission's order denying the motion to dismiss is found in the trial court's finding that the section 19(b) time structures were inapplicable because of the parties' stipulation forgoing any objection based upon the reporter's failure to "complete or finish a transcript within the time fixed by law."

The majority refers to *Gould*. In *Gould*, the supreme court, in discussing the obligations with respect to report of proceedings, made the statement:

> "The requirement that the report should be filed within fifty days of the date of the award was left in the statute and governs as to all cases *except where the failure to file the report of the proceedings has been caused by the failure of the reporter to furnish such report, and not the neglect of the party seeking the review.*" *Gould*, 311 Ill. at 477-78.

We are reweighing the evidence presented to the Commission. The disposition discusses the diligence issue on the part of the appellant. There was a timely request for review and transcript. The Commission had the responsibility to furnish the transcript. The court reporter was an employee of the Commission per section 16 of the Act.

The Commission in a specific order denied the motion to dismiss. Its order was not against the manifest weight of the evidence or an abuse of discretion. Our decision will be adding a new requirement by judicial edict.

One other matter needs to be addressed. The majority states that "The timely filing of such statement of facts or transcript is a prerequisite to the Commission's obtaining jurisdiction" (306 Ill. App. 3d at 1075), and in the next paragraph, "Contreras does not argue that the Commission lacked jurisdiction ***" (306 Ill. App. 3d at 1076). Can we ignore a question of jurisdiction even if not argued by the parties? The answer is no. Apparently the effect of this decision is that there is no issue pertaining to jurisdiction.