No.  3--02--0525

(Consolidated with 3--02--0553)

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

THE DEPARTMENT OF TRANSPORTATION, )  Appeal from the Circuit  Court 

for and in behalf of THE PEOPLE OF THE )  of the 10th Judicial Circuit

STATE OF ILLINOIS, )  Peoria County, Illinois,

)

Plaintiff-Appellee, )

)

vs. )  No.  02--ED--19

)

DALE K. HUNZIKER, as Trustee of the Barbara )

J. Hunziker Family Trust Dated October 10, 1999, )

)

Defendant-Appellant, )

)

and )

)

MELINDA WOSKOW MAYANI, as Trustee of )

the Melinda Mayani Trust, established under the )

Last will and Testament of Ann Woskow dated )

April 9, 2001; BURGER KING CORPORATION, )

a Florida Corporation; JOHN DRURY; CHARLES )

R. McLOCHLIN; NORBERT J. LUKAS; )

RICHARD O. DEIGNAN; ROBERT DEIGNAN; )

FREDRICK W. KAUFMAN; ROBERT S. )

COHEN; FIRST AMERICAN BANK, f/k/a )

COMMERCIAL NATIONAL BANK as )

Trustee of Trust No. 130-01908002, as )

Trustee of Trust No. 66-7792-0 and as Trustee )

of Trust No. 66-8033, n/k/a NATIONAL CITY, )

a Banking Corporation; TPC-CHI, INC., f/k/a )

CHART HOUSE, INC., a Delaware Corporation; )

TALMAN HOME FEDERAL SAVINGS AND )

LOAN ASSOCIATION OF ILLINOIS, n/k/a )  

LASALLE BANK, N.A., a National Banking )  

Association; EDWARD T. O'CONNOR, Peoria ) 

County Treasurer; and UNKNOWN OWNERS )

AND NON-RECORD CLAIMANTS, )  Honorable

)  Stuart P. Borden,

Defendants. )  Judge Presiding

) 

Consolidated with: )

)

THE DEPARTMENT OF TRANSPORTATION, )

for and in behalf of THE PEOPLE OF THE )

STATE OF ILLINOIS, )

)

Plaintiff-Appellee, )

)

vs. )  No.  02--ED--20

)

DALE K. HUNZIKER, as Trustee of the Barbara )

J. Hunziker Family Trust Dated October 10, 1999, )

)

Defendant-Appellant, )

)

and )

)

A.A. GREEN, Trustee under Trust No. 66-7792-0; )

DENNY'S, INC., a California Corporation; )

CENTRAL DINING, INC., an Illinois Corporation; )

MELINDA WOSKOW MAYANI, as Trustee of )

the Melinda Mayani Trust, established under the )

Last will and Testament of Ann Woskow dated )

April 9, 2001; BURGER KING CORPORATION, )

a Florida Corporation; JOHN DRURY; CHARLES )

R. McLOCHLIN; NORBERT J. LUKAS; )

RICHARD O. DEIGNAN; ROBERT DEIGNAN; )

FREDRICK W. KAUFMAN; ROBERT S. )

COHEN; FIRST AMERICAN BANK, f/k/a )

COMMERCIAL NATIONAL BANK as )

Trustee of Trust No. 130-01908002, as )

Trustee of Trust No. 66-7792-0 and as Trustee )

of Trust No. 66-8033, n/k/a NATIONAL CITY, )

a Banking Corporation; TPC-CHI, INC., f/k/a )

CHART HOUSE, INC., a Delaware Corporation; )

TALMAN HOME FEDERAL SAVINGS AND )

LOAN ASSOCIATION OF ILLINOIS, n/k/a )

LASALLE BANK, N.A., a National Banking )

Association; EDWARD T. O'CONNOR, Peoria )

County Treasurer; PROFESSIONAL REALTY )

SERVICES, LTD.; SOUTH SIDE TRUST & )

SAVINGS BANK OF PEORIA, a Banking )

Corporation; and UNKNOWN OWNERS AND )  

NON-RECORD CLAIMANTS, )  Honorable

)  Joe R. Vespa,

Defendants. )  Judge Presiding.

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

Plaintiff Department of Transportation (the Department) filed complaints for condemnation of two contiguous parcels of property (the property) owned by defendant Dale Hunziker.  The other defendants also have an ownership or other interest in the property.  Hunziker filed a traverse and motion to dismiss each complaint which the trial courts denied.  On appeal Hunziker contends that the Department was required to disclose the appraisal reports which it used to determine the amount of compensation offered for the property.  We agree.

Facts

In February of 2002 the Department notified Hunziker that its plans to widen Interstate 74 made it necessary to acquire his property.  A separate letter was sent for each parcel.  The letters set forth the amount of compensation that had been established by the Department and included a document entitled "Basis for Computing Total Approved Compensation and Offer to Purchase" (the basis document).  Because the information contained in the basis document is critical to our resolution of this case, the relevant parts of one of those documents is set forth below:

"1. Existing Property:

Total area 31, 467 square feet, more or less.  

Highest and best use as appraised, Fast food restaurant

2. Land to be Acquired as Permanent Right of Way: 

Estate or interest to be acquired fee simple.

additional right of way 1,443 square feet

Existing right of way (when applicable) 0 square feet

Total right of way 1,443 square feet

3. Improvements and/or Fixtures to be Acquired:

Removal of a portion of the asphalt paving, concrete curbing, and landscaping, along with removal of two parking lot light fixtures mounted on light poles with concrete bases, an on-premise advertising sign, and elimination of 12 parking spaces.

4. Compensation for Permanent Right of Way:

Fair market value of the 1,443 square feet to be acquired including all improvements as part of the whole property, based on an analysis of market data in the vicinity of the acquisition. $35,000.00

Damage to the remaining property as a result of the acquisition

(Relocation of sign, loss of parking) $35,000.00

Total compensation for permanent right of way $70,000.00

Less cost of construction to be offset against total

compensation $         0.00

Net Compensation $70,000.00

Benefits in the amount of $ NONE have been estimated to the remaining property.  These benefits have been offset against any possible damages but have not been offset against any part of the compensation for the part acquired.

5. Compensation for the Removal of Signs Located on the Proposed Right of Way:

A description of the sign to be removed by the owners $  0

Total compensation for sign removal $  0

6. Compensation for Temporary Construction Easements:

Parcel No. 415PO23TE -- 355 square feet $ 2,000.00

for grading, shaping, and sidewalk construction

Parcel No. $  0

Total compensation for easements $  2,000.00

7. Total Compensation for Entire Acquisition, which 

includes all interests in the land required for the 

highway improvement ad damages to the remainder, 

if any.  (sum of 4+5+6) $ 72,000.00"

In response to the Department's offers, Hunziker requested copies of the appraisal reports on which the offers had been based.  The department refused, stating that it was its policy not to release appraisals except in response to an appropriate discovery request.  On May 9, 2002, the Department filed its complaints for condemnation, along with motions for immediate vesting of title under the "quick-take" provisions of the Eminent Domain Act (the Act).  See 735 ILCS 5/7--103 (West 2002).  Hunziker filed a traverse and motion to dismiss each case, along with a motion for expedited discovery.  The discovery motion was granted and plaintiff thereafter furnished Hunziker with the appraisal reports for the property.  Following a hearing on June 12, 2002, Hunziker's traverses and motions to dismiss were denied. In each case the trial judge found that plaintiff was not required to furnish Hunziker with copies of its appraisals during negotiations, although one judge noted his belief that plaintiff's actions "smack[ed] of arrogance" and were contrary to the spirit of sections 7--102 and 7--102.1 of the Act.  735 ILCS 5/7--102, 7--102.1 (West 2002).  Hunziker now appeals, and we reverse.

Analysis

Jurisdiction

The Department has raised the issue of this court's jurisdiction over this appeal in light of 
Southwestern Illinois Development Authority v. National City Environmental, L.L.C.
, 304 Ill. App. 3d 542, 710 N.E.2d 896 (1999), 
aff'd
, 199 Ill. 2d 225, 768 N.E.2d 1 (2002).  In 
Southwestern
 the fifth district appellate court held that the issue of whether the condemning authority had made a good faith attempt to negotiate could not be considered in an interlocutory appeal brought pursuant to Supreme Court Rule 307(a)(7) (166 Ill. 2d R. 307(a)(7)) and section 7--104(b) of the Act (735 ILCS 5/7--104(b) (West 2002)).  
Southwestern
 relied on 
Southwestern Illinois Development Authority v. Vollman
, 235 Ill. App. 3d 32, 600 N.E.2d 926 (1992), which held that an interlocutory appeal pursuant to section 7--104 of the Act was limited to the three issues delineated in subsection 7--104(b), which states in part:

"(b)  At the [quick-take] hearing, if the court has not previously, in the same proceeding, determined [1] that the plaintiff has authority to exercise the right of eminent domain, [2] that the property sought to be taken is subject to the exercise of such right, and [3] that such right is not being improperly exercised in the particular proceeding, then the court shall first hear and determine such matters.  The court's order thereon is appealable, and an appeal may be taken therefrom by either party within 30 days after the entry of such order, but not thereafter[.]"  735 ILCS 5/7--104(b) (West 2002).

We believe that the 
Southwestern
 court construed subsection 7--104(b) too narrowly. One of the findings that is expressly appealable is whether the right of eminent domain is "being improperly exercised in the particular proceeding."  735 ILCS 5/7--104(b) (West 2002).  Since good faith negotiation by the condemnor is a condition precedent to exercising that right (see 
Department of Transportation v. 151 Interstate Road Corp
., 333 Ill. App. 3d 821, 777 N.E.2d 369 (2002), 
appeal
 
allowed
, 202 Ill. 2d 669, 787 N.E.2d 172 (2003) and cases cited therein), review of the good faith issue is proper as part of the larger issue of the propriety of exercising the power of eminent domain.  
151 Interstate
, 333 Ill. App. 3d 821, 777 N.E.2d 369.  In the same manner, the question of whether the Department must disclose its appraisal reports is appealable because of its relationship to the issue of good faith negotiations.  We find no jurisdictional impediment to this appeal.

Standard of Review

Generally, a trial court's ruling on a traverse and motion to dismiss is subject to a manifest weight standard of review.  See, 
e.g.
, 
151 Interstate
, 333 Ill. App. 3d 821, 777 N.E.2d 369; 
City of Naperville v. Old Second National Bank
, 327 Ill. App. 3d 734, 763 N.E.2d 951 (2002).  More particularly, the manifest weight standard has been applied to a trial court's finding that the condemnor acted in good faith.  See 
151 Interstate
, 333 Ill. App. 3d at 834, 777 N.E.2d at 381.  However, while this case involves the question of good faith negotiations by the Department, it does not involve a factual dispute.  The sole issue is whether the Department is required, as part of its obligation to negotiate in good faith, to disclose its appraisal reports to property owners.  The resolution of that issue requires interpreting section 7--102.1 of the Act.  Statutory interpretation is a question of law (
Branson v. Department of Revenue
, 168 Ill. 2d 247, 659 N.E.2d 961 (1995)), and questions of law are reviewed 
de
 
novo
 (
151 Interstate
, 333 Ill. App. 3d at 833, 777 N.E.2d at 380).

We now consider the substantive issue presented by this case:  Must the Department, as part of its duty to negotiate in good faith, disclose the appraisal reports it uses in determining the amount of compensation offered to a property owner?  We believe that it must.

Section 7--102 of the Act enables a public body to initiate condemnation proceedings when "the compensation to be paid for or in respect of the property to be appropriated *** cannot be agreed upon by the parties."  735 ILCS 5/7--102 (West 2002).  "Thus, the attempt to reach an agreement with a property owner is a condition precedent to the exercise of the power of eminent domain."  
151 Interstate
, 333 Ill. App. 3d at 834, 777 N.E.2d at 380; see also 
City of Naperville
, 327 Ill. App. 3d 734, 763 N.E.2d 951; 
Department of Transportation v. Brownfield
, 221 Ill. App. 3d 565, 582 N.E.2d 209 (1991); 
Department of Transportation v. Walker
, 80 Ill. App. 3d 1039, 400 N.E.2d 956 (1980).  The attempt to agree must be made in good faith.  
151 Interstate
, 333 Ill. App. 3d 821, 777 N.E.2d 369; 
City of Naperville
, 327 Ill. App. 3d 734, 763 N.E.2d 951.

Of course, a good faith attempt to agree may arguably take many forms.  For example, in 
County Board of School Trustees v. Boram
, 26 Ill. 2d 167, 170, 186 N.E.2d 275, 277-78, (1962), our supreme court held that an attempt to agree does not necessarily require the condemnor to make an offer for the property:

"The statute does not require an offer but only requires that before exercising the right of eminent domain the authorities shall first attempt to agree on the amount of compensation.  The making or not making of an offer is an important factor in determining whether a 
bona
 
fide
 attempt to agree had been made, but an offer is not necessary where, as here, it is clear from the acts of the parties that it would be futile."

Boram
 was decided, however, long before the legislature codified the duties imposed on a State agency prior to initiating condemnation proceedings.  Effective January 1, 1992, section 7--102.1 provides in part:

"(d)  At least 60 days before filing a petition with any court to initiate a proceeding under this Article, a State agency shall send a letter by certified mail, return receipt requested, to the owner of the property to be taken, giving the property owner the following information:

(1)  
The amount of compensation
 for the taking of the property proposed by the agency,  
and the basis for computing it
.

(2)  A statement that the agency continues to seek a negotiated agreement with the property owner.

(3)  A statement that in the absence of a negotiated agreement it is the intention fo the agency to initiate a court proceeding under this Article."  (Emphasis added).  735 ILCS 5/7--102.1(d) (West 2002).

As the language emphasized above indicates, the Department is required to not only make an offer, but it must also provide the property owner with "the basis for computing" the offer.  The Department argues that the "basis documents"  it provided to Hunziker satisfied its statutory obligation and therefore it did not have to provide the underlying appraisals.  We disagree.

The basis document provides the following information: (1) the square footage of the entire property and a determination of its highest and best use; (2) the square footage of the land to be acquired and a description of any improvements or fixtures; and (3) the amount of compensation, broken down into various components such as value of the property, damage to the remainder, and the value of easements.  While the Department is correct in asserting that a property owner could use this information to compute the price per square foot of the offer (
e.g.
, $35,000 divided by 1,443 square feet equals $24.255 per square foot), what is missing is 
how
 that price was determined.  Section 7--102.1(d)(1) requires the Department to provide the 
basis
 for computing the amount of compensation.  The term "basis" is defined as the "[f]undamental principle; groundwork; support; the foundation or groundwork of anything[.]"  It has also been defined as "the principle component parts of a thing."  Black's Law Dictionary 151 (6th ed. 1990).  The latter definition is fairly descriptive of the basis document, while the former definitions are, we believe, more akin to what an appraisal would provide.  Which definition should we adopt?  We find that established principles of statutory construction, as well as sound public policy considerations, compel us to hold that section 7--102.1(d)(1) requires the Department to provide a property owner with an appraisal where one has been performed.

Statutes authorizing the taking of property through eminent domain are in derogation of individual rights (
Village of Bolingbrook v. Citizens Utilities Co.
, 267 Ill. App. 3d 358, 642 N.E.2d 182 (1994)) and must be strictly construed to protect the rights of property owners (
Village of Cary v. Trout Valley Ass'n
, 282 Ill. App. 3d 165, 667 N.E.2d 1082 (1996)).  See also 
Village of Round Lake v. Amann
, 311 Ill. App. 3d 705, 723 N.E.2d 35 (2000).  Construing the term "basis" to include an appraisal where one has been performed protects the rights of property owners by providing full access to the information underlying the Department's compensation offer.

In addition, the primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  In determining that intent, courts must read the statute as a whole, giving consideration to all relevant parts.  
Village of Cary
, 282 Ill. App. 3d 165, 667 N.E.2d 1082.  A review of the provisions of the Eminent Domain Act leads us to conclude that the Act "evidences a clear public policy to encourage voluntary

acquisitions of property and to discourage forced appropriations through the exercise of the right of eminent domain."  
Patrick Media Group, Inc. v. DuPage Water Comm'n
, 258 Ill. App. 3d 1068, 1076, 630 N.E.2d 958, 964 (1994).  In our opinion, section 7--102.1 is intended to further that policy and our interpretation is consistent with that aim.  As Hunziker points out, withholding the appraisals left him with no basis to negotiate and forced him to either obtain his own appraisal or litigate the condemnation case.  Forcing a property owner to make such a choice does nothing to encourage voluntary acquisition.  On the contrary, the Department's policy would likely increase the volume of condemnation litigation because, as Hunziker notes, an offer to pay compensation coupled with a refusal to disclose the appraisal on which the offer is based implies that the condemnor is attempting to acquire the property for less than fair market value.  This practice invites litigation which, assuming the condemnor has offered the appraised value, is wholly unnecessary and avoidable.

Finally, requiring the Department to disclose its appraisal reports helps to level the playing field between the condemnor and the property owner.  As the court noted in 
City of Naperville
:

"The negotiations that precede a condemnation proceeding cannot be viewed in the same manner as negotiations between a private buyer and seller.  In a private negotiation, either party can walk away from the negotiation if the price is not right.  However, in a condemnation proceeding, the property owner does not have the same luxury.  If the property owner cannot agree to compensation with the condemning authority, he will incur the cost and expense of defending against a condemnation proceeding in order to secure the payment of the fair market value of the property.  It is for this reason that the condemning authority must make a good faith effort to negotiate prior to filing suit."  327 Ill. App. 3d at 740-41, 763 N.E.2d at 956.

Requiring appraisal disclosure as part of that good faith effort enables the property owner to assess the reasonableness of the Department's offer without incurring the expense of hiring his own appraiser.  This increases the likelihood of an amicable agreement between the parties.  Nondisclosure, on the other hand, forces the property owner to either hire an appraiser and litigate the condemnation case, or blindly accept the offer.

The Department argues that the property owner does not benefit from disclosure of the Department's appraisal because most citizens, lacking the knowledge or expertise to value real estate, will still have to hire their own appraiser to evaluate the Department's offer.  We disagree.  Many adults have gained at least some familiarity with appraisal reports when obtaining a mortgage, a not uncommon occurrence.  While appraisals can be complex, the frequently employed method of using comparable properties to ascertain value is not highly technical and can provide useful information even to the unsophisticated property owner.  In any event, even if only a few property owners decide to accept the Department's offer because they have reviewed an appraisal report, those few have been spared the cost and inconvenience of litigation, as has the Department.  Indeed, the Department has offered only two reasons to justify its policy of nondisclosure.  The first, additional administrative costs, seems fairly insignificant in view of the fact that the Department is already required to send property owners a "60 day letter" prior to filing a condemnation action.  See 735 ILCS 5/7--102.1(d) (West 2002).  The second justification offered by the Department for refusing to disclose its appraisal reports is that the Eminent Domain Act does not require it.  On the contrary, as we have explained, section 7--102.1(d)(1) mandates disclosure of the basis for computing the amount of the Department's offer, which includes an appraisal where one has been prepared.  Accordingly, because the Department refused to disclose the appraisal reports to Hunziker prior to filing its condemnation actions, the Department failed to negotiate in good faith, and Hunziker's traverses and motions to dismiss should have been granted.

For the reasons stated above, the judgments of the circuit court are reversed.  We remand these causes with directions to the trial courts to vacate the orders finding preliminary just compensation and vesting title in the Department.  The courts may also consider the issue of defendant's fees and costs as provided in the Act.

Reversed and remanded with directions.

McDADE, P.J., concurs.

JUSTICE LYTTON, dissenting
:

Under the Eminent Domain Act (735 ILCS 5/7-101 et seq.) (Act), a condemning party must first negotiate in good faith with a condemnee in an attempt to settle the case prior to initiating court action.  735 ILCS 5/7-102 (West 2003).  Section 102.1 of the Act places additional negotiating responsibilities on state agencies, such as the plaintiff Department of Transportation (DOT).  Among other things, state agencies must send a certified letter giving the property owners the "basis" for computing the compensation offered.  735 ILCS 5/7-102.1(d)(1).

The majority labors over a definition of "basis," picks one that suits it, and decides that "basis" means "appraisal."  Although I will address this definitional wrangling in Section II, I believe that it sidesteps the critical approach to the issue.

I.

We must examine statutory language as it is.  See 
People v. Pullen
, 192 Ill. 2d 36 (2000).  We do not need to apply rules of construction or dictionary definitions here.  None are needed.  This court should not read exceptions, limitations or conditions into an unambiguous statute.  
Certain Taxpayers v. Sheehen
, 45 Ill. 2d 75 (1970).  The statute does not require a letter enclosing an appraisal; it requires the letter to give the property owner the basis for the compensation.  A "basis" is simply that ... a basis.  "Basis" is not "appraisal."

The leading case on this issue is 
Wise v. United States, et al.
, 369 F. Supp. 30 (W. D. Ky 1973).   In 
Wise
, the court analyzed the language of section 4651 of the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (42 U.S.C. 4651), which requires that "The head of the Federal agency ... shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation."  

Like the defendant in this case, the plaintiff in 
Wise
 argued that the word "basis" really means "appraisal."  The court dismissed Wise's argument, saying that the statute was clear: "[t]he 
plain
 
wording
 of the statutes above is persuasive that the Corps of Engineers is not required to furnish to the real estate owner a full appraisal report.  It is, however, required to furnish a written statement of the basis for the amount established of just compensation and a summary of that basis."  (emphasis added)   
Wise
, 369 F. Supp. at 32.  "The language of 42 USC §4651 does not entitle [Wise] to a copy of the appraisal of his property."   
Wise
, 369 F. Supp. at 32.  The court looked at the statute, found the word "basis" and enforced the statute as written.

The language of the federal statute is substantially the same as Illinois'.  There is no reason not to follow 
Wise
 in its refusal to substitute another word for one already contained in the statute.  A court should not restrict or enlarge the meaning of an unambiguous statute.  
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 394 (1999).

When our legislature passed section 702.1, it had several examples of similar legislation to review.  Different statutes have taken different approaches to the issue.  The Model Eminent Domain Code requires that the "condemnor shall provide the owner of the property with a written appraisal, if one has been prepared, or if one has not been prepared, with a written statement and summary, showing the basis for the amount established as just compensation for the property."  Model Eminent Domain Code (U.L.A.) Vol. 13 § 203(c).  See also Mich. Comp. Laws Ann. § 213.55(1) (West 2003); N.M. Stat. Ann. § 42A-1-4 (Michie 2002).

Many states require that appraisals be given to landowners at the commencement of prefiling negotiations.  See, for example, Fla. Stat. § 73.015 (West 2003); Ohio Rev. Code Ann. § 163.04 (2003); Tex. Prop. Code Ann. § 21.0111 (2001); Va. Code Ann. § 25-46.5 (Michie 2002); Wisc. Stat. Ann. § 32.05(2)(b) and 32.06(2) (West 2003). 

Some jurisdictions, like Illinois, require the condemnor to provide a basis for just compensation to a condemnee.  For instance, the federal statute requires a pre-filing appraisal of the property, but a condemning agency is only required to give a landowner "a written statement of and summary of the basis for the amount...established as just compensation."  42 U.S.C. § 4651 (2) and (3). Alabama, the only state to codify the Model Eminent Code, modified this section of the Model Code to provide that a condemnor need only furnish a condemnee with a written statement and summary showing the basis for just compensation.  See Ala. Code § 18-1A-22(d) (2003).

Colorado requires the state condemning agency to pay for a landowner's appraisal and upon its receipt, turn over its own appraisals of the property.  Colo. Rev. Stat. Ann. § 38-1-121 West 2003).  New Jersey, on the other hand, requires a "reasonable disclosure of the  manner" in which offer has been calculated.  N.J. Stat. Ann. § 20:3-6 (West 2003).  Some states merely require good faith negotiations.  See Idaho Code § 7-707 (2002); Mont. Rev. Code Ann. § 70-30-111 (Smith 2002); Neb. Rev. Stat. Ann. § 76-704-1 (Michie 2002).

A wide array of options was available to the Illinois legislature.  It chose a course for state agencies to follow, (see 87th Ill. Gen. Assem. House Proceedings, April 5, 1991 at 46; Senate Proceedings, May 20, 1991 at 88, 90), and determined that state agencies must provide a basis for just compensation.  We are not permitted to add requirements that the legislature does not impose.  
People v. Laubscher
, 183 Ill. 2d 330 (1998); 
People ex rel. Callahan v. Marshall Field & Co.
, 83 Ill. App. 3d 11 (1980).  DOT did exactly what the statute required.

In a pointed legislative example of the distinctness and clarity of these words, the California legislature made a simple segue from "basis" to "appraisal."  The California eminent domain statute requires that in every condemnation, "a summary of the basis of the amount *** established as just compensation" be provided to the landowner.  Cal. Civ. Proc. Code § 7267.2(b)(West 2003).  The next paragraph provides that, for owner occupied residential property with no more than four residential units, "the homeowner shall, upon request, be allowed to review *** the appraisal upon which the offer is based."  Cal. Civ. Proc. Code § 7267.2(c)(West 2003).  Thus, all landowners receive the basis, while some also receive an appraisal. 

When our legislature selects words with authentic understandings, it does not have to report or describe them to the courts.  Legislation is not a legal dictionary and does not have to mimic one to identify the natural results of common words.  The use of the word "basis" appears to be a conscious one; we should not assume the legislature was sleepwalking when it drafted the statute.  If the legislature had wished to require appraisals to be provided, it surely could have done so.  It did not; nor should we. 

II.

I have stated that the statute's meaning is clear.  It requires no unessential or frivolous construction to understand.  "Where an enactment is clear and unambiguous, this court is not at liberty to read into it exceptions, limitations, or conditions that the legislature did not express; nor should this court search for any subtle or not readily apparent intention of the legislature."  
People v. Laubscher
, 183 Ill. 2d 330, 337 (1998).

Though I believe defining "basis" is an unnecessary appendage to this dissent, I will respond to the majority's struggle with the meaning of basis, i.e., is "basis" defined more or less stringently according to Black's Law Dictionary. 

Black's defines "basis" either as "the foundation or groundwork," or "the principle component parts" of the offer.  Slip op. at 11.  Although I am uncertain about any qualitative difference between the two definitions offered, the majority has little hesitation and imposes a draconian approach. 

Even under the majority's definition of basis, the disclosure of an appraisal is not required.  DOT's offer contained the various findings that the land itself was worth $X, the costs of moving fixtures to another location are $Y, etc.  DOT's basis letter clearly disclosed its estimate of each individual factor that would have an impact on the price of the land.  This is more than enough "foundation" or "groundwork."

The majority's rationale that providing the appraisal obtained by DOT will help avoid litigation does not ring true.  Giving landowners an appraisal has little real effect.  Property appraisal is not an exact science.  In any appraisal, there will never be an precise value rendered; only a sale of the property can definitively determine value.  A letter giving the landowner the same values based on the same reasoning derived from the appraisal gives a landowner sufficient foundation for just compensation.

Furthermore, an appraisal does not put the property owner on a better footing for negotiation. Nothing changes.  Landowners would still need to obtain their own appraisal to determine whether the land may be worth more than the DOT appraisal reflects.  It is difficult to imagine how negotiations will improve after this rule is introduced.  Without more information, DOT would still not be interested in purchasing land for more than the fair market value established by its own appraisal.  A state agency may be left with few alternatives to the much maligned "take it or leave it" approach to negotiations.  Similarly, landowners approached by DOT will either be willing to accept the amount offered based on DOT's appraisal or they will challenge the offer in the court. 

III.

One more matter needs discussion here.  Section 7-102.1 does not require appraisals to be the basis for offers.  Indeed, appraisals are not mentioned in section 7-102.1.  State agencies are free to analyze value at the negotiation stage of the proceedings without obtaining appraisals, and they may.  The majority's opinion will undoubtedly discourage state agencies from getting any appraisals at all.  That would be an unfortunate result of this new rule.  

SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

In its petition for rehearing, the Department has requested that we apply our ruling in this case prospectively.  "While, as a general rule, a decision will be applied retrospectively, a court has the inherent power to determine whether its decision should be prospectively or retroactively applied."  
Carlson v. Moline Board of Education, School District No. 40
, 231 Ill. App. 3d 493, 499, 596 N.E.2d 176, 181 (1992); see 
Aleckson v. Village of Round Lake Park
, 176 Ill. 2d 82, 679 N.E.2d 1224 (1997); 
Contreras v. Industrial Commission
, 306 Ill. App. 3d 1071, 715 N.E.2d 701 (1999).  Our supreme court has established the following principles to guide the inquiry into whether a decision will be applied prospectively:

"[W]hether a ruling will be applied prospectively will depend upon whether the decision to be applied nonretroactively establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.  If either of these criteria is met, the question of prospective or retroactive application will be answered by considering whether, given the purpose and prior history of the rule, its operation will be retarded or promoted by prospective or retroactive application and whether prospective application is mandated by a balance of equities."  
Bogseth v. Emanuel
, 166 Ill. 2d 507, 515, 655 N.E.2d 888, 892 (1995).

Our ruling that section 7--102.1(d) of the Act requires a state agency to disclose an appraisal, where one has been prepared, as part of its statutory obligation to provide the property owner with the "basis" for computing the amount of compensation offered, was an issue of first impression whose resolution was not clearly foreshadowed.  The rule's purpose of encouraging voluntary acquisitions of property and discouraging litigation will be promoted by prospective application.  Those cases already in litigation cannot benefit from the rule, and applying it retroactively to other cases would only promote litigation and defeat the rule's purpose.

Accordingly, we hold that the requirement to supply an appraisal where one has been performed applies only to those eminent domain proceedings commencing after the date of our decision in this case.  However, we reject the Department's request not to apply our ruling to the instant case.  "On those occasions when prospective application is warranted, the holding of the court still controls the case at bar; to not apply the rule would render it 
dictum
 and deprive the challenger of the fruits of his efforts in questioning the old, erroneous rule."  
John Carey Oil Co. v. W.C.P. Investments
, 126 Ill. 2d 139, 149, 533 N.E.2d 851, 855 (1988); see
 
Carlson
, 231 Ill. App. 3d 493, 596 N.E.2d 176.  The petition for rehearing is denied.

McDADE, P.J., concurs.